W. C. WYLIE et ux., Appellants,

v.

Bette REED, Trustee, a Co-Partnership, Appellee.

No. 5932.

Court of Civil Appeals of Texas, Waco.

March 22, 1979.

Rehearing Denied April 12, 1979.

Leo J. Hoffman, Strasburger & Price, Dallas, Jack T. Life, Life & Bolding, Athens, for appellants.

James W. McCartney and Ben H. Rice, Vinson & Elkins, Houston, James W. Bradford, Jr., Angleton, Hugh D. Reed, Fairfield, for appellee.

F. H. (Hastings) Pannill, Sr. and Charles L. Morgan, Jr., Pannill & Morgan, Inc., Huntsville, for amicus curiae.

## OPINION

JAMES, Justice.

This is an appeal from a second summary judgment. Plaintiff-Appellee Bette Reed, Trustee, a co-partnership, brought this suit against Defendant-Appellants W. C. Wylie and wife Iva Jack Wylie for a declaratory judgment to the effect that as between Reed and the Wylies, the Wylies have no ownership of the coal and lignite deposits in a certain tract of 223.385 acres of land located in Freestone County, nor of the royalty funds attributable to the coal and lignite removed from the tract in question.

Prior to a former appeal of this case, to wit, on November 19, 1975, the trial court entered a summary judgment in favor of Reed against the Wylies with respect to the ownership of coal and lignite which "may" be mined or removed from the tract in question by open pit or strip mining methods. This court reversed and remanded the first summary judgment, holding in effect that the judgment was not supported by proper summary judgment proof. *Wylie v. Reed* (Waco CA 1976) 538 S.W.2d 186. The Supreme Court of Texas affirmed the judgment of this Court of Civil Appeals and held that Reed was not entitled to a summary judgment. *Reed v. Wylie* (Tex.1977) 554 S.W.2d 169.

Reed is the owner of the granted surface estate of the tract in question, whereas the Wylies are the owners of one-fourth of the minerals in and to said tract by virtue of a mineral reservation in a 1950 deed. By a deed dated September 30, 1950, the Wylies conveyed the tract in question to James F. Baker. That deed contained the following reservation:

"In addition to the above and foregoing exception there is hereby excepted and reserved to the Grantors herein a one-fourth (¼) undivided interest in and to all oil, gas and other minerals on and under the land and premises herein described and conveyed; and it is hereby expressly agreed and understood that Grantors herein, their heirs and assigns shall have, and they hereby have the right of ingress and egress for the sole and only purpose of mining and operating for oil, gas and all other minerals, on and under said land, and to produce, mine, save and take care of said products, and to take all usual, necessary and convenient means for working, preparing and removing said minerals from under and away from said land and premises."

All of the interest conveyed by this deed to James F. Baker is now owned by Bette

Reed, Trustee, Plaintiff-Appellee herein. Specifically, Baker and wife conveyed the tract in question to one Stewart by deed dated December 15, 1953; then Stewart and wife conveyed the subject tract to one Garrett by deed dated November 25, 1955; then Garrett, joined by his children, conveyed to Plaintiff-Appellee Bette Reed, Trustee, the tract in question by deed dated February 22, 1974. All of said deeds subsequent to the Wylies-to-Baker deed specifically excepted the one-fourth mineral reservation in favor of the Wylies described in the Wylies-to-Baker deed. Therefore, this controversy is between the Wylies on the one hand, and Reed on the other, as to whether the Wylies retained the ownership of a one-fourth interest in coal and lignite in this tract of land by virtue of the reservation in the Wylies-to-Baker 1950 deed hereinabove referred to.

At the time of the first summary judgment, the lignite mining upon the tract in question had just begun. Strip mining operations were begun upon the subject tract in October 1975 and were completed in May 1977. Therefore, at the date of the second summary judgment now appealed from, to wit, March 28, 1978, the strip mining operations upon the tract in question had been completed.

After the first appeal, Plaintiff-Appellee Reed again moved for a summary judgment, contending in effect that the coal and lignite deposits were "at the surface" of the tract in question, so that Plaintiff-Appellee Reed is entitled to judgment as a matter of law as surface owner to all of the coal and lignite therein. Said motion for summary judgment is supported by the affidavit and oral deposition of Ted Mayo, Civil Engineer and Fuel Superintendent of Texas Utilities Generating Company, which company conducted the strip mining operations, as well as the affidavits of F. S. Hill, Vernon C. Doctorman, and Roger Steward.

Mayo's affidavit recites that he has personal knowledge of the location of the lignite beds upon the subject tract of land, and of the strip mining of said tract; that said land was strip mined beginning in October 1975 and ending in May 1977, with the recovery of 1298.62 acre feet of lignite from said tract; that there were two seams of lignite underlying the tract, one seam beginning at about twenty (20) feet below the surface of the ground and continuing at that depth while on this property; whereas the other seam ranged from twenty (20) feet below the surface to a depth of eighty (80) feet below the surface; the lignite seams dip in a uniform fashion and in a general southeast direction at one to two degrees or approximately 100 feet per mile; that generally, the lignite found at depths of less than 15 feet is low quality, weathered lignite called "smut," and this is true on the Reed tract; that below 15 feet is the hard, minable lignite. In Mr. Mayo's affidavit he stated he had seen at least three outcrops of lignite in Freestone County, the nearest ones being within ¼ mile and 2 miles, respectively, from the tract in question. However, in his deposition Mr. Mayo testified that he had seen one outcrop of lignite exposed at the surface upon the tract in question, same being in a natural gulley located in the northeast corner of said tract, said outcropping being located in the bottom of said gulley about 20 to 25 feet below the top bank thereof.

F. S. Hill's affidavit showed that he had personal knowledge of ten specific outcrops of lignite in Freestone County, specifically locating same, none of which were located on the tract in controversy.

Vernon C. Doctorman by affidavit stated that from 1925 to 1943 he was employed as a mining engineer in connection with lignite mining operations at Malakoff, Texas, and at other places in Texas, and that he knows "of his own knowledge that strip mining is a method that has been used successfully in Texas since 1925 to extract lignite."

Roger Steward's affidavit states that to his knowledge for the past 50 years there has been no oil or gas well drilled on the subject tract, nor any mining thereupon until Texas Utilities Generating Co. began to strip mine lignite in 1975.

The gist of Reed's contention based upon the above-summarized summary judgment

proof is, that there can be no factual issue as to the depth of the lignite on the tract, and there can be no factual issue as to the process of production used by Texas Utilities Generating Co., to extract the coal and lignite from the property; and since as a matter of law the coal and lignite lay "at the surface" of the land, no further proof is necessary to establish ownership by Plaintiff Reed as against the claim by the Wylies under their mineral reservation.

Defendants Wylie by their First Amended Original Answer pleaded not guilty, general denial, assertion that they are the owners of the coal and lignite in question to the extent of their ¼th mineral reservation in the 1950 deed to Baker, and title thereto by virtue of the 5, 10, and 25 year statutes of limitation; in addition thereto, the Wylies filed a cross-action against Reed seeking a reformation of their 1950 deed to Baker based upon mutual mistake concerning the ¼th mineral reservation hereinabove quoted. That is to say, Wylies allege that it was the clear intention of the Wylies, Baker, and the attorney who prepared the 1950 deed that the ¼th mineral reservation by the Wylies would and did include coal and lignite at whatever depth, and regardless of whatever method would be used to mine and remove same.

Reed in her answer to the Wylie cross-action pleaded that she was a bona fide purchaser of the tract in question without notice of any mistake or specific intent alleged by the Wylies in their cross-action; and in addition thereto, Reed pleaded the 4 year statute of limitations to the Wylie cross-action for reformation of the 1950 deed.

Defendants Wylie also filed a "Response in Opposition to the Reed Second Motion for Summary Judgment," attached to which were affidavits of Mr. and Mrs. Wylie (themselves), R. C. Lamb, James F. Baker, Tommie Willard, Alton Coates, Kenneth Coates, Jim S. Fryer, Hugh E. Fryer, John Douglas Fryer, and Bowlen Bond.

The affidavit of R. C. Lamb states that he has been a professional engineer for 30 years with wide experience in lignite mining activities in Texas; that originally lignite was mined almost exclusively by an underground mining operation, using the room and pillar method, with entry by either shaft or slope method, all underground; that less than 10% of all lignite mines operated in Texas prior to 1940 were surface or strip mines; that underground mining was common in Freestone, Anderson, and Henderson Counties in Texas; that due to lack of market demand, all lignite mines in Freestone County ceased to operate during the period from the early 1940's to the early 1960's, and at no time during the periods mentioned is there any record of surface or strip mining for lignite in Freestone County; that the underground mining operations for lignite in the above-named three counties were located from 15 to 24 miles from the Reed tract in controversy. Mr. Lamb defines the terms "outcrop" and "subcrop" concerning lignite deposits, saying, "an outcrop occurs when the lignite seam is at the surface or is only obscured by soil from a high level such as a bank with a shallow cover of 3 to 4 feet." Then he says, "A subcrop occurs when the lignite seam is well below the surface. This condition is the result of a seam ending abruptly at an underground location at a depth of 5 feet or greater, having an overburden cover of that depth." Lamb goes on to state, "it is my professional opinion that no coal or lignite outcrops ever existed on the Reed tract," and further, "that the coal and lignite underlying the Reed tract could have been commercially and feasibly mined on September 30, 1950, by shaft or slope mining in a manner so as not to consume or deplete the surface estate."

The affidavits of Tommie Willard, Alton Coates, Kenneth Coates, Jim S. Fryer, Hugh Fryer, and John Douglas Fryer state in effect that each of them have known the Reed tract for many years, and each stated that he never saw any outcropping of coal or lignite on the surface of the Reed tract. Jim S. Fryer and Hugh Fryer stated that there was local shaft mining for lignite near Donie in the southwest part of Freestone County which ceased sometime prior

to 1950; and that all coal and lignite mining that was done in Freestone County had been done by the shaft method until 1974.

Moreover, the Wylies presented affidavits by themselves, James F. Baker, and Attorney Bowlen Bond which in effect showed that the parties clearly intended that the reservation by the Wylies in the 1950 deed to Baker would and did include all coal and lignite located upon and in the tract in controversy. The Wylies' summary judgment proof further showed that in 1949 the Wylies executed a mining lease to Roger Steward covering the tract in question wherein the lessee was permitted to strip-mine the lignite thereupon, which lease was amended by an instrument executed by the Wylies in 1964 covering the ¼th mineral interest owned by the Wylies. Said original lease and amended lease had each been seasonably filed for record in Freestone County.

The trial court granted a summary judgment in favor of Plaintiff-Appellee Reed to the effect that Reed is the owner of all the coal and lignite located upon the tract in question, as well as the owner of the royalty funds held by Texas Utilities Generating Co. for the payment of all the coal and lignite removed from said property. In said judgment it was recited that "the depth of lignite on the Reed tract is established without substantial controversy and that coal and lignite outcrops or is exposed on the surface at numerous places in the area of the land involved; and that on the land in question the coal and lignite lay in shallow parts of the formation within 22 feet of the surface; so that the Court holds that the coal and lignite deposits were at the surface of the land in question and that Plaintiff has shown as a matter of law that the Defendants' mineral reservation did not include the coal and lignite on this land _____." Said summary judgment also held that the Defendants Wylie take nothing on their cross-action for reformation of the 1950 deed to Baker.

Defendant-Appellants Wylie complain of the summary judgment, asserting the existence of genuine issues as to material facts

which would preclude Reed's entitlement to a judgment as a matter of law. We sustain these contentions, and hold that the summary judgment was improvidently granted, and thereby reverse and remand the cause for trial upon the merits.

█ The duty of the court hearing the motion for summary judgment is to determine if there are any issues of fact to be tried, and not to weigh the evidence or determine its credibility, and thus try the case on the affidavits. Rule 166–A, Tex. Rules of Civil Procedure; *Gulbenkian v. Penn* (1952), 151 Tex. 412, 252 S.W.2d 929, 931. Summary judgment should be granted, and if granted, should be affirmed only if the summary judgment record establishes a right thereto as a matter of law. *Gibbs v. General Motors Corp.* (Tex.1970) 450 S.W.2d 827; *Harrington v. Young Men's Christian Assn. of Houston* (Tex.1970) 452 S.W.2d 423. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. In other words, the evidence must be viewed in the light most favorable to the party opposing the motion. All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.* (Tex.1965) 391 S.W.2d 41, 47. Also see *Whitten v. Metro Bank of Dallas* (Waco CA 1977) 556 S.W.2d 383, no writ.

█ Applying the foregoing rules to the case at bar, as we must, we are of the opinion and hold that the summary judgment record before us presents genuine issues of material fact, thereby precluding summary judgment.

Our Supreme Court in the former appeal of this case has laid down certain rules of law which we believe throw light upon and furnish guidance in the appeal now before us. *Reed v. Wylie* (Tex.1977) 554 S.W.2d 169. For example, at page 172, the Court says:

"*Acker v. Guinn* (Tex.1971, 464 S.W.2d 348) stands for the rule that a substance is

not a 'mineral' if substantial quantities of that substance lie so near the surface that the production will entail the stripping away and substantial destruction of the surface. That being the circumstance, and there being no contrary affirmative expression in the instrument, it controls the construction of the instrument as to the same substance at all depths.

"It is improper therefore to declare that the surface owner is entitled to only so much of the substance as may be produced by strip mining or pit mining. We are not dividing the right to produce the substance; we are construing the instrument of conveyance to ascertain the ownership of the substance. Furthermore, the rule of construction does not favor the surface owner simply because it is shown that the substance 'may' be produced by strip or pit mining. Instead, the surface estate owner must prove that, as of the date of the instrument being construed, if the substance near the surface had been extracted, that extraction would necessarily have consumed or depleted the land surface."

Here, the Supreme Court clearly states that the *surface owner* (Reed) *must prove* that as of *September 30, 1950*, the date of the instrument being construed, if the lignite near the surface had been extracted, *that extraction would necessarily have consumed or depleted the land surface.* Does the summary judgment proof now before us show this as a matter of law? We think not. Nowhere in Reed's summary judgment proof is there any showing that the only method of mining the lignite would consume or deplete the surface. The proof is, that this was in fact the method employed to mine the lignite, but there is no proof that no other feasible method was available. Indeed, the summary judgment proof on the Wylie side is to the effect that in earlier times in the vicinity of and prior to 1950, that most lignite mining in the Freestone County area of Texas was done by shaft or underground methods, and that this was a feasible method of mining the Reed tract in 1950. Under the record before us, we cannot say as a matter of law that if the lignite had been mined on the tract in question in 1950, that such mining would necessarily have consumed or depleted the land surface.

Next, 554 S.W.2d on page 173, the Supreme Court holds: "If lignite lies *at the surface* of the land, no further proof would be required to establish the title of Reed to the lignite as against Wylie's claim under the 1950 reservation." (emphasis supplied). Plaintiff-Appellee contends that it has met its burden by proof as a matter of law that the lignite lies *at the surface* of the land, and that by use of the term, "the land" is meant land in the vicinity of the Reed tract, and not confined just to the Reed tract alone. We do not agree. On page 173 of the Supreme Court's opinion, the Court makes it clear that it is referring to the "land being conveyed." Here again the summary judgment proof is conflicting, concerning whether the lignite lies "at the surface" of the Reed tract. Reed's proof showed with particularity the location of the lignite, which showed it generally at depths ranging from 20 to 80 feet below the surface of the Reed tract, with one outcropping in a gulley in the northeast corner of the tract. To the contrary, Wylie's proof by several witnesses showed that there were no outcroppings of lignite at the surface of the Reed tract. Under the record before us, we cannot say as a matter of law that the summary judgment proof shows conclusively the existence of lignite at the surface of the Reed land.

As stated before, the Wylies filed a counterclaim for reformation of the 1950 deed to Baker based upon mutual mistake as to the legal effect of the language used in the 1/4th mineral reservation, contending that the parties concerned intended that said mineral reservation would and did include all coal and lignite at whatever depth and however mined. Affidavits of the Wylies, Baker, and Attorney Bowlen Bond were filed showing these facts in opposition to Reed's motion for summary judgment. Without discussing the ramifications of this cross-action, suffice it to say that we believe the record on its raises material fact issues which would cause a summary judgment to be improper.

For the reasons herein stated, we hereby reverse and remand the cause for trial on the merits.

REVERSED AND REMANDED.