Robert Michael REED, Appellant,

v.

VALLEY FEDERAL SAVINGS & LOAN COMPANY, Appellee.

No. 2734cv.

Court of Appeals of Texas, Corpus Christi.

May 12, 1983.

Rehearing Denied June 2, 1983.

Carl H. Judin, Jr., McAllen, for appellant.

Wm. E. Corcoran, McAllen, for appellee.

Before NYE, C.J., and UTTER and GON-ZALEZ, JJ.

## OPINION

GONZALEZ, Justice.

This case primarily involves the question of the liability of a savings and loan association when it applies guardianship funds to pay off the individual indebtedness of the guardian. After the minor learned that the assets of the guardianship had been dissipated by the guardian, he sued the savings and loan association to recover the funds that had been on deposit there. After a trial to the court without a jury, the trial court rendered a take nothing judgment against the minor. The minor appealed. We reverse and render.

The relevant facts are as follows: In June, 1976, the father of appellant, Robert Michael Reed, died intestate leaving appellant an estate valued at approximately $35,-000. Appellant was a minor at the time. In August, 1976, Paul M. Moore, Jr. was appointed guardian of the person and estate of appellant. A $5,000 bond was posted by the guardian.[1] On November 23, 1976,

---

1. There is no explanation in the record why the county court set a $5,000 bond on a $35,000 estate.

Moore took $10,000 from the guardianship estate and purchased a certificate of deposit at Valley Federal Savings & Loan Company, appellee. The certificate of deposit was put in the name of "Robert M. Reed, Minor, by Paul M. Moore, Jr., Guardian." Thereafter, Moore, using the certificate of deposit as collateral, made four separate loans totalling $7,300 and used the proceeds for his personal business.

The loans were as follows:

| Date | Pay to Order Of | Amount |
|---|---|---|
| June 23, 1977 | Paul M. Moore, Jr., Guardian for Robert M. Reed, Minor | $1,500.00 |
| July 15, 1977 | Paul M. Moore, Jr., Trustee | $2,500.00 |
| August 2, 1977 | Paul M. Moore, Jr., Trustee | $1,500.00 |
| October 21, 1977 | Paul M. Moore, Jr., Trustee | $1,800.00 |

On May 8, 1978, Moore surrendered the certificate of deposit to repay the loans. The legend on the bottom portion of the check has the following computation:

```
"G12031 SCP 33415          $10,846.42 DU
GL 3180  Penalty                318.79 IU
                 Total       10,527.63
SL 50246      Pay off         7,763.74
         Total to Customer    2,763.89"
```

Each loan that Moore obtained was referred to as "Share Loan 50246." When the certificate was surrendered, it was surrendered during the penalty period and an interest penalty of $318.79 was deducted leaving a total payoff due to Moore for the certificate of $10,527.63. As seen above, from this amount appellee deducted the loans which had been made by Moore ($7,300) plus the interest due on the loans in the amount of $463.74. The $7,763.74 deducted was then credited to account SL–50246. After deducting this amount, there remained $2,763.89 and appellee issued a check for said amount payable to "Paul M. Moore, Jr."

All of these facts were alleged by appellant in his petition, and stipulated at the trial. Appellee also stipulated that Moore at no time obtained court orders from the probate court to borrow money on behalf of the minor and that no court orders had been entered authorizing the loans to Moore by appellee on behalf of the minor and that none of the $10,527.63 was received by the minor.[2]

Among other things, appellant also alleged in his petition that:

1) At the time the certificate of deposit was issued by appellee, appellee knew or should have known that the certificate of deposit was held in trust for the ward (appellant) with the guardian, Moore, as trustee.

2) Appellee had a duty to ascertain whether the subsequent expenditures made by the guardian from this account were for authorized purposes.

3) By allowing the guardian to receive funds from the certificate of deposit and apply them to the debt the guardian owed to appellee, appellee benefited from Moore's wrongful acts and negligently failed to prevent the misappropriation of the funds by Moore.

4) By allowing Moore to pledge guardianship funds without a court order and by accepting the funds to pay the unauthorized debts, appellee converted the money of the guardianship estate and became liable to appellant to pay the amount of the certificate of deposit plus interest either on the theory of negligence or conversion.

Appellee takes the position (then and now) that at no time was it presented with any documents relating to the guardianship, though it admits that it was given oral notice of the guardianship. It further contends that the rights and duties of the parties were established by a "trustee card" that Moore signed, when the account was established. The card provides in part:

"The institution in which such funds are invested is authorized to pay the same or to act in any respect affecting said account before or after the termination of this trust upon the signature of the trustee and has no responsibility to follow the application of the funds."

**2.** On January 16, 1980, the probate court in an amended order approving restatement of the account, forfeited the $5,000 bond and awarded judgment to the minor against Moore in the amount of $29,599.75.

Because of this, appellee contends that there is no basis for liability and therefore the trial court's judgment should be affirmed. Appellee further contends that Tex.Prob.Code Ann. § 389 (Vernon 1980) and Tex.Rev.Civ.Stat.Ann. art. 852a § 6.11 (Vernon 1964) provide for the deposit of guardianship funds in a savings and loan association without the necessity of a prior court order.

As to § 329 of the Probate Code, appellee asserts that it does not place an affirmative duty on the savings and loan association to require a court order before a guardian is allowed to pledge guardianship funds. In short, it contends that it simply honored and complied with the wishes of the depositor in the disbursement of the funds and that the terms of the trustee card shields them from any liability for the misdeeds of the guardian.

As previously noted, after a trial to the court the court rendered a take nothing judgment against appellant.

Appellant brings five points of error. The first four points contend that the trial court erred in entering a take nothing judgment against appellant.

Section 389 of the Probate Code authorizes guardians to invest monies belonging to the ward in shares or share accounts of federal savings and loan associations domiciled in Texas.

Section 6.11 of Art. 852a, the Savings & Loan Act, provides in pertinent part:

"Any ... Federal savings and loan association doing business in this State may accept savings accounts in the name of any ... guardian, ... or other fiduciary for a named beneficiary ... and ... such fiduciary shall have power ... to open and make additions to, and to withdraw from any such account in whole or in part. *Except when otherwise provided by law,* the payment to any such fiduciary or a receipt or acquittance signed by any such fiduciary to whom any payment is made shall be a valid and sufficient release and discharge of an institution for the payment so made." (emphasis supplied)

Section 329 of the Probate Code provides in part:

"(a) Circumstances Under Which Money May Be Borrowed. Any real or personal property of an estate may be mortgaged or pledged ... as security for an indebtedness, under order of the court, when necessary for any of the following purposes:

(1) For the payment of any ... taxes ...;

(2) For payment of expenses of administration, ...

(3) For payment of claims allowed and approved, or established by suit, against the estate; or

(4) To renew and extend a valid, existing lien; or

(5) In the case of guardians of estates, if the real estate of the ward is not revenue producing but could be made revenue producing by certain improvements and repairs, ... to make such improvements or repairs; or

(6) In the case of guardians of estates, the probate court in its discretion may authorize the borrowing of money where it is in the best interest of and for the protection of the estate of the ward.

(b) Procedure for Borrowing Money. When it is necessary to borrow money for any of the aforementioned purposes, or to create or extend a lien upon property of the estate as security, a sworn application for such authority shall be filed with the court, .... Thereupon, the clerk shall issue and cause to be posted a citation to all interested persons, stating the nature of the application and requiring such persons, if they choose so to do, to appear and show cause, if any, why such application should not be granted.

(c) Order Authorizing Such Borrowing, or Extension of Lien. The Court, if satisfied by the evidence adduced at the hearing upon said application that it is to the interest of the estate to borrow money, or to extend and renew an existing lien, shall issue its order to that effect, setting

out the terms and conditions of the authority granted; . . . ."

In *U.S. Fidelity & Guaranty Co. v. Adoue & Lobit,* 104 Tex. 379, 137 S.W. 648, aff'd on reh., 104 Tex. 379, 138 S.W. 383 (1911), the court held that a certificate of deposit to an individual in a fiduciary capacity is notice that it is trust property and the bank is liable if it permits a fiduciary to apply the trust funds to the payment of the trustee's personal debts or permits its diversion to the personal use of such trustee. Furthermore, the court stated "if the bank has notice or knowledge that a breach of trust is being committed by an improper withdrawal of funds, or if it participates in the profits or fruits of the fraud, then it will be undoubtedly liable." 137 S.W. at 653. This rule was adhered to by the Austin court in *Canyon Lake Bank v. New Braunfels Utilities,* 638 S.W.2d 944 (Tex.App.—Austin 1982, no writ).

■ If an account is labeled a trust account and contains trust funds to the knowledge of the bank, the bank will be a participant in a breach of the trust, if it honors a check in favor of a third person when it actually knows that the check is given for a non-trust purpose. A bank can no more lawfully aid in applying trust funds to the personal benefit of the trustee or of a third person than it can legally assist in taking those funds for its own benefit. Bogert, *Trust and Trustees,* Section 908 (Second Edition Revised 1982). Likewise, if a bank in which trust funds have been deposited has notice that funds deposited are trust funds, it cannot set off against its liability on the deposit a debt owing to it by the trustee personally. See Restatement, 2d, *Trusts,* Section 324, Comment i.

Appellee argues that it did not have knowledge of the guardian's actions. Therefore, it cannot be held liable.

■ In *Adoue & Lobit, supra,* the court stated that if the fund were deposited by one as trustee, the trustee would have the right to withdraw the monies, and absent knowledge of the trustee's misconduct, the bank would assume that the withdrawal was made for trust purposes. Therefore, absent notice, the bank cannot question the right of a customer to withdraw trust funds, even if the deposit is to the customer's own credit.

However, the court declared that a bank which received a deposit in the depositor's name as "guardian" it, as a matter of law, had notice of the trust character of the fund so as to prevent the application of the trust funds to the depositor's individual indebtedness. See also 8 A.L.R.3rd 235 Anno.

In *Grebe v. First State Bank of Bishop,* 136 Tex. 226, 150 S.W.2d 64 (1941) the court, citing the *Adoue* case reiterated that where a bank has notice or knowledge that a breach of the trust is being committed by an improper withdrawal of funds or if it participates in the profits or the fruits of the fraud then it will be undoubtedly liable. This case and the cases cited herein are distinguishable from *Smith v. Commercial State Bank of Ranger,* 157 S.W.2d 969 (Tex. Civ.App.—Eastland 1941, writ dism'd) in that in the *Smith* case the bank was not a participant in the breach of trust where it simply permitted the trustee to deposit the check to his personal account and then check it out for his personal purposes because it was clearly established that the bank did not have any actual knowledge of any intended wrong nor did it profit from said wrong.

In the case of *Wichita Royalty Co. v. City Nat. Bank of Wichita Falls,* 127 Tex. 158, 89 S.W.2d 394 (1935), the court analyzing the *Adoue* case, noted that the bank in *Adoue* was held liable not only for that part of the trust fund received in payment of the fiduciary's debt, but also for the additional sums thereafter checked out by him. The court reasoned that the act of the bank in placing the funds in the personal account of the fiduciary, from where they were used for other than trust purposes, was obviously wrongful, and the bank must bear the resulting consequences.

■ In this case, when Moore deposited the $10,000 into the savings and loan association as "guardian," appellee was put

on notice of the trust character of funds and it could not lawfully pay the funds to any person except to "Paul M. Moore, Jr., Guardian for Robert M. Reed, Minor." Though this is the way the first check was written, the loans were to Moore individually and not to the guardianship estate because there were no court orders authorizing them as required by the Art. 329 of the Probate Code. Therefore, appellee could not legally have applied the money to repayment of any of Moore's debts to itself nor could it lawfully return the balance of the funds to Moore individually without incurring liability for them. When it offset the loans, appellee participated actively in the transactions with Moore and secured a personal benefit to itself. It further breached its trust duties to the appellant by paying the remainder of the funds ($2,763.89) to Moore individually and thereby became liable for them. Art. 852a § 6.11, *supra.* By the same token, appellee cannot, by the use of the "trustee card," circumvent the provisions of the Probate Code which require prior court approval for the pledge of guardianship funds and for loans to the guardianship estate. Since no court orders were obtained, appellee became liable for the $7,300 in loans that it made to Moore.

Appellant's first four points of error are sustained.

Appellant in his final point of error contends that the trial court erred in not filing requested Findings of Fact and Conclusions of Law.

■ Although not in literal compliance with Tex.R.Civ.P. 263, the case was presented on stipulated facts. If the parties stipulate all the facts of an action though they are not in strict compliance with the rule, the stipulation may be treated as a submission upon an agreed statement and neither findings of fact nor conclusions of law need be filed. The appeal is limited to the single issue of the correctness of the application of the law to the admitted facts and the trial court and the reviewing court are limited to the agreed facts and cannot make any findings of fact which do not conform to the stipulated facts. *Henry S. Miller Co. v. Wood,* 584 S.W.2d 302 (Tex.Civ.App.—Texarkana), aff'd on other grounds, 579 S.W.2d 332 (Tex.1980); *Merrimack Mutual Fire Insurance Co. v. McCaffree,* 486 S.W.2d 616 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r. e.); 4 R. McDonald, *Texas Civil Practice,* Sec. 16.03 (1971). Appellant's fifth point of error is overruled.

The judgment of the trial court is reversed and it is here rendered that appellant recover from appellee $10,527.63 plus interest at the rate of 6% per annum from June 7, 1978 to May 12, 1983. This judgment shall bear interest at 9% per annum from the date hereof until paid. Costs of appeal are taxed against the appellee.