[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above entitled matter was submitted to an attorney trial referee ("ATR") based upon a stipulation of facts and both parties have filed objections to the report, as corrected: The present matter does not involve questions of credibility and no findings of facts were made. Therefore, the issues presented to the court involve only issues of law. Morton Buildings vs. Dannon,222 Conn. 49, 53-54 (1992).
On May 1, 1989, James C. Moyer ("Moyer"), a former attorney who has resigned from the Connecticut Bar, deposited, at the CT Page 3032 Westport branch of the defendant, the sum of $110,285.21 into his trustee account thereby raising the balance of the account from $14.82 to $110,300.03. The deposit made by Moyer represented the proceeds from the sale of property owned by Grace Flannagan for whom Moyer was acting as conservator. The following day, on May 2, 1989, Moyer entered Derby branch office of the defendant and instructed the Assistant Branch Manager to debit the trustee account in the amount of $93,179.24 and to pay off debts owed by Moyer individually to the defendant which then had balances of $88,745.91[1] and $2,433.33 respectively, and to deposit the remaining $2,000 into his personal checking account.
The trustee account had been opened at the Derby branch of the defendant by the Assistant Branch Manager who effectuated the transaction requested by Moyer on May 2. Some time between May 2, 1989 and prior to May 19, 1989, the Senior Vice President and General Counsel of the defendant suspected that Moyer's conduct with regard to the May 2 transaction was improper because it appeared that Moyer was drawing upon funds placed in a trustee account to pay a personal obligation which raised a question as to whether Moyer was converting his client's funds. After a police investigation, Moyer was arrested, charged with a criminal offense, jailed and resigned from the Connecticut Bar.
One of the personal debts paid off by Moyer involved a loan originally granted to him in November of 1987 for which Moyer had executed a mortgage on property as security for the payment of a note. In February of 1989, an internal audit of the defendant revealed that the mortgage given by Moyer had not been recorded and that the property had been sold in December of 1988. In March of 1989, the Senior Vice President and General Counsel for the defendant spoke with Moyer concerning the situation and demanded immediate payment of the note. Moyer stated that he would be making payment in full by April 1, 1989. Prior to May 2, 1989, the defendant attempted to locate assets owned by Moyer to recover the monies due under the note but was unsuccessful in locating any such assets except for another parcel of real property which was encumbered.
The Assistant Branch Manager of the defendant did not question Moyer's request made on May 2 and carried out his instructions after verifying the balance in the account to be debited and determining the pay-off figures for the loans. She did not ask whether the loans to be paid were Moyer's personal loans and merely called the loan officer to obtain the pay-off figures. She also CT Page 3033 did not know that the account to be debited was not a personal account but could have made such a determination by the utilization of defendant's files or accessing its computer information. In effectuating Moyer's instructions on May 2, no checks or other commercial paper were generated and the transaction was effectuated through the defendant's internal banking system which included preparation of debit/credit memo instructions which were carried out by the defendant's central processing department. None of the actions of the Assistant Branch Manager violated any policy of the defendant.
The plaintiff was surety for Moyer on a bond in the amount of $130,000 which was received and accepted by the Shelton Probate Court in connection with the sale of property owned by Grace Flannagan. In July of 1989, Moyer was removed as conservator of the estate of Grace Flannagan and the Probate Court called the bond upon which the plaintiff has paid the sum of $120,285.21.
The plaintiff has obtained a stipulated judgment against Moyer in the amount of $123,285.21 which remains wholly unsatisfied. On September 5, 1989, the plaintiff made written demand upon the defendant for the return of the funds which had been debited Moyer's trustee account. The defendant disputed its liability to make the payments requested by the plaintiff. The plaintiff then instituted the present action.
The first count of the complaint alleges that the defendant participated in a breach of trust and converted monies belonging to the plaintiff's subrogor; the second count alleges that the defendant had a special or confidential relationship with the estate of Grace Flannagan and that the defendant has unjustly benefited from the facts alleged; the third count alleges that the actions of the defendant constitutes an improper set-off; the fourth count alleges a claim based on negligence. The ATR has recommended that the court enter judgment in favor of the plaintiff on the first count, and enter judgment for the defendant on the second, third and fourth counts.
The parties do not contest that the plaintiff is subrogated to the rights of the Estate of Grace Flannagan. The defendant does claim that the relationship between a bank and its depositor is a debtor/creditor relationship which cannot be the subject of a cause of action for conversion. See, Annotation 44 A.L.R.2d 927. 7c (1955) and subsequent cases. The plaintiff also claims that it did not participate in a breach of trust. CT Page 3034
A bank is not required to monitor all trustee accounts to ensure that the trust purposes are being effectuated. See, Goodwin v. American Bank, 48 Conn. 251 (1981). However, in the present case, the defendant, by electronic transfer using a debit/credit memo, has caused funds to be transferred from a trustee account to the bank in payment of outstanding personal indebtedness of the trustee. Thus, the result of the May 2 transaction is a direct benefit to the bank and a corresponding injury to the Estate of Grace Flannagan. See, Lowndes v. City National Bank, 82 Conn. 8,13 (1909). While a duty upon a bank to monitor trust accounts may be limited, "[A] different situation arises where the bank has a personal interest in the transaction, as where it seeks to apply the funds deposited with it to an indebtedness of the depositor to it. It is clear that a bank will not be permitted to profit by a misapplication by the depositor of trust funds where the bank has notice of a breach of trust. Where the bank seeks to apply the funds deposited to an indebtedness of the depositor individually to it, it is chargeable with notice that this would involve a breach of trust, although it would not be charged with such notice where it had no personal interest in the transaction but was merely acting as a depository." (Emphasis supplied) Fratcher, Scott on Trust 324.4 at pp. 265-266 (4th Ed. 1989). Thus, "[T]here is general agreement that if a person who has a claim against the trustee is his individual capacity accepts from the debtor, in payment of the debt, or as security therefore, property which the creditor knows or should know is trust property, the recipient takes part in the breach of the fiduciary obligation." (Emphasis supplied). Bogert, Trusts and Trustees, 904 pp. 279-280 (2nd Ed. revised 1982); Centrust Savings Bank v. Barnett Bank and Trust Co.,483 So.2d 867, 869 (Fla.App. 5th Dist. 1986) (Banks own records sufficient to provide notice); See, Reed v. Valley Federal Savings and Loan Co., 655 S.W.2d 259, 263 (Tex.App. 13th Dist. 1983).
In the present case there is no demonstration that any one individual employed by the defendant was aware of all the facts relating to the transaction at the time it occurred. While the Assistant Branch Manager may have opened the trustee account, there was not an awareness on her part at the time the transaction was effectuated that funds were being taken from the trustee's account. There is no indication that the Assistant Branch Manager was aware of the fact that other officers of the bank knew that Moyer was in default on a note; that Moyer failed to record a mortgage on property utilized to secure the note; or that the defendant had unsuccessfully attempted to locate assets of Moyer to secure the CT Page 3035 repayment of his indebtedness. Even though the Assistant Branch Manager may not have violated any bank policy, the fact is that trust funds on deposit in a trustee account with the defendant were utilized to pay a personal obligation of the trustee to the defendant.
A bank is not required to monitor all trustee accounts to ensure that the trust purposes are being effectuated. However, where a bank accepts trustee funds on deposit with it in payment of the personal debt of the trustee, the bank participates in a breach of trust, if there be such, to extent that the bank benefits from the transaction. Accordingly, the court holds that the defendant is liable in the estate of Grace Flannagan, and therefore to the plaintiffs, to the extent that the bank benefited from the transaction. Thus, the defendant is liable to the plaintiff for the sum of $91,179.24 (the funds utilized to payoff the personal obligations of Moyer i.e. $88,745.91 and $2,433.33). However, the defendant did not benefit from the transfer of the $2,000 from the trust account to Moyer's personal account and, therefore, did not incur any liability to the plaintiff as a result of that transfer.
Having determined that liability upon the defendant is based upon the theory of a participation in a breach of trust, it is unnecessary to consider whether the execution of a debit/credit memo constitutes "property" over which the defendant exercised unauthorized dominion so as to establish a cause of action for conversion. See, Davitt v. Manulik, 176 Conn. 657, 660 and 662 (1979).
The court also finds that plaintiff is entitled, pursuant to General Statutes 37-3a, to interest at the rate of 10% per year from September 5, 1989 when the plaintiff requested the return of the funds to the date hereof, in the amount of $32,498.98 (1301 days at $24.98 per day).
On December 24, 1991, the plaintiff filed an offer of judgment in the amount of $88,745.19 which was not accepted by the defendant. Accordingly, pursuant to General Statutes 52-192a, the plaintiff is also entitled to interest at the rate of 12% for year from December 24, 1991 to the date hereof on the amount of the award including prejudgment interest ($123,678.14). Gillis v. Gillis, 21 Conn. App. 549 (1990). The plaintiff is entitled to additional interest in the amount of $18,784.92 (462 days at $40.66 per day). CT Page 3036
Accordingly, judgment may enter for the plaintiff in the amount of $142,463.06.
RUSH, J.