NUMBER 13-02-088-CV
 
COURT OF APPEALS
 
THIRTEENTH DISTRICT OF TEXAS
 
CORPUS CHRISTI - EDINBURG


 
 
ALMA GROUP, L.L.C.,                                                                Appellant,

v.

GAMBLE J. PALMER AND JEAN T. CRAVENS,                       Appellees.




On appeal from the County Court at Law No. 4
of Hidalgo County, Texas.




O P I N I O N

Before Justices Hinojosa, Yañez, and Castillo

Opinion by Justice Castillo

         This is a suit on a note. By two issues, appellant Alma Group, L.L.C. ("Alma"),
holder of the note, appeals: (1) a take-nothing judgment in favor of the debtors,
Gamble J. Palmer and Jean T. Cravens (collectively, "Palmer"), appellees; and (2) the
trial court's award of attorney fees to Palmer. We reverse and remand. 
I. FACTS
         On December 29, 1986, Palmer executed a real estate lien note, made payable
to United Bank of Texas, in the amount of $160,000 (the "original note"). The State
Banking Commissioner declared United Bank of Texas insolvent and appointed the
Federal Deposit Insurance Corporation ("FDIC") as receiver of the original note. 
         Palmer defaulted. The FDIC initiated non-judicial foreclosure proceedings. 
Palmer filed suit and obtained an order restraining the foreclosure. The FDIC removed
the proceedings to the United States District Court for the Southern District of Texas
in Corpus Christi, Texas. There, the parties dismissed the suit by agreement and
entered into a Compromise Settlement Agreement (the "Settlement Agreement").
         Pursuant to the Settlement Agreement, Palmer agreed to pay the FDIC $45,000
in cash and execute a promissory note in the amount of $125,000 payable to the FDIC
(the "Second Note"). The Settlement Agreement contained an "agreed final judgment"
clause that provided: 
1.2Agreed Final Judgment. As part of the consideration of this
Agreement, Plaintiffs shall execute, through their counsel, the
Agreed Final Judgment in the form attached hereto as Exhibit "A"
and return the signed Agreed Final Judgment to FDIC's counsel
prior to July 1, 1993. To the extent [the Lawsuit] cannot be
reinstated and an Agreed Final Judgment entered therein, the FDIC
will file (and Plaintiffs will not oppose) a new cause of action in
the Southern District of Texas, Corpus Christi Division (the "New
Lawsuit") setting forth substantially the same allegations as set
forth in the Lawsuit. Contemporaneously with filing of the New
Lawsuit, Palmer and Cravens will file an Original Answer, setting
forth generally the same claims as previously raised in the Lawsuit. 
The Parties will immediately thereafter file in the New Lawsuit, an
Agreed Final Judgment in substantially the same form as the
agreed final judgment.

         The Settlement Agreement also contained a non-assignment clause that
provided: 
3.10 Assignment. Neither this Agreement nor any interest herein shall
be assigned by any Party without the written consent of the other,
except in the event of a statutorily created successor in interest to
the FDIC. 

         On July 14, 1993, Palmer signed the Second Note, payable to the FDIC, in the
amount of $125,000. The Second Note did not contain a non-assignment clause or
reference the Settlement Agreement. It defined "holder" as including "heirs,
executors, administrators, legal representatives, successors, assigns and
beneficiaries." 
         In June 1995, the FDIC transferred the Second Note and the Settlement
Agreement to Beal Bank ("Beal"). Palmer defaulted on the Second Note in November
1995. As a result of Palmer's default, Beal transferred the Second Note back to the
FDIC in December 1997. 
         On September 30, 1998, the FDIC transferred all rights, title, and interest in the
Second Note and the Settlement Agreement to Alma. Alma accelerated. On
October 29, 2001, Alma sued Palmer for the balance of principal and accrued interest. 
Palmer counterclaimed, alleging breach of contract and tortious interference with
contract against Alma. Pursuant to rule 11 of the Texas Rules of Civil Procedure,



Alma and Palmer filed a joint stipulation that recited the foregoing facts.


 The parties
asked the trial court to decide the issues of law presented by the case on the
stipulated facts. See Tex. R. Civ. P. 263. The stipulated facts included the following:
14.The parties stipulate that the FDIC and Alma did not seek or obtain
written consent from Palmer as to the assignment of the [Second] Note
and Settlement Agreement by the FDIC to Alma.

         After hearing the stipulated evidence and arguments of counsel, the trial court
concluded that Alma was entitled to take nothing and that Palmer was entitled to
attorney fees. This appeal ensued. 
II. SCOPE AND STANDARD OF REVIEW
         The judgment recites that "all relevant facts were stipulated to by the parties."


 
We first address the standards we apply when reviewing a judgment based on
stipulated facts. 
         Stipulations in an agreed case are binding on the parties, the trial court, and the
reviewing court. M.J.R.'s Fare v. Permit & License Appeal Bd., 823 S.W.2d 327, 330
(Tex. App.–Dallas 1991, writ denied). We conclusively presume that the parties have
brought all the facts necessary for the presentation of the case. Cummins & Walker
Oil Co., Inc. v. Smith, 814 S.W.2d 884, 886 (Tex. App.–San Antonio 1991, no
writ).  We do not draw any inference or find any facts not embraced in the
agreement.  Id. We limit our review to the stipulated facts unless other facts
are necessarily implied from the stipulated facts. Highlands Ins. Co. v. Kelley-Coppedge, Inc., 950 S.W.2d 415, 417 (Tex. App.–Fort Worth 1997), rev'd on
other grounds, 980 S.W.2d 462 (Tex. 1998). We do not review the legal or factual
sufficiency of the evidence in a case tried on stipulated facts. City of Harlingen v.
Avila, 942 S.W.2d 49, 51 (Tex. App.–Corpus Christi 1997, writ denied). Rather,
we review the trial court's order to determine whether the trial court correctly
applied the law to the stipulated facts. Id.; accord Thompson v. Cont'l Airlines,
18 S.W.3d 701, 705 (Tex. App.–San Antonio 2000, no pet.); Stewart v. Hardie,
978 S.W.2d 203, 206 (Tex. App.–Fort Worth 1998, pet. denied); Reed v. Valley Fed.
Sav. & Loan Co., 655 S.W.2d 259, 264 (Tex. App.–Corpus Christi 1983, writ ref'd
n.r.e.). 
         Our review is de novo in an agreed case. Highlands Ins. Co., 950 S.W.2d
at 417; see also Orange County Appraisal Dist. v. Agape Neighborhood Improvement,
Inc., 57 S.W.3d 597, 601 (Tex. App.–Beaumont 2001, pet. denied). A trial court has
no discretion in deciding the law or its proper application. Highlands Ins. Co.,
950 S.W.2d at 417. Accordingly, we defer less to the trial court in "agreed" cases
than in ordinary reviews. Id. In an appeal of an "agreed" case, there are no presumed
findings in favor of the judgment, and the pleadings are immaterial. Id.; Kessler,
932 S.W.2d at 735. 
III. ANALYSIS
A. Validity of the Transfer
         Alma asserts that as assignee of the FDIC, it obtained the right to enforce the
Second Note. Palmer counters that the FDIC's assignment of the Second Note to
Alma was invalid, arguing that the anti-assignment provision in the Settlement
Agreement also applies to the Second Note. 
         A dispute over an anti-assignment provision also arose in First Nationwide Bank
v. Fla. Software Servs., Inc., 770 F. Supp.1537 (D. Fla. 1991). In First Nationwide
Bank, two cases were consolidated for trial. Id. at 1539. In both cases, a banking
corporation purchased the majority of the assets and liabilities belonging to an
insolvent institution from the Federal Savings and Loan Insurance Association
("FSLIC"). Id. The insolvent institutions had contracted with the defendant licensors
for the use of banking software. Id. Included within those contracts were anti-assignment provisions that prohibited assignment of the contracts without prior
approval. Id. at 1539-40. The banking corporations did not seek prior approval. Id.
at 1540. The defendant licensors asserted that the acquisitions breached the anti-assignment clauses. Id. They conditioned continued use of the software on increased
licensing fees. Id. The banking corporations filed a declaratory judgment action
against the defendant licensors, seeking a determination they were not in breach of the
anti-assignment clauses. Id. at 1538-39. 
         The federal district court in First Nationwide Bank held that FSLIC's
assignments of the license agreements did not breach the anti-assignment clauses. 
Id. at 1544. In reaching that conclusion, the court analyzed the effect of the
Financial Institutions Reforms, Recovery and Enforcement Act of 1989 ("FIRREA")
on the validity of the assignments. Id. at 1540. In particular, the court discussed
section 1821(d)(2)(G)(i)(II) of title 12, which states that the FDIC may, as
conservator or receiver, "transfer any asset or liability of the institution in default . . .
without any approval, assignment, or consent with respect to such transfer." 
12 U.S.C.A. § 1821(d)(2)(G)(i)(II) (West 2001); First Nationwide Bank, 770 F. Supp.
at 1541 n.3. In determining that FIRREA authorized the assignments despite
non-assignability language in the underlying contracts, the court looked to the
purpose of the legislation:
The statute was obviously passed with the public welfare in mind.
According to a House Report on the subject of FIRREA,
 
The interests of the American taxpayer demand an
expedited resolution to the monumental problems involved
with the unprecedented costs of dealing with hundreds of
insolvent thrifts and the orderly disposition of the assets of
these failed institutions.
First Nationwide Bank, 770 F. Supp. at 1540 (citations omitted). The court held that
"12 U.S.C. § 1821(d)(2)(G)(II) authorized the FSLIC to transfer the License
Agreements to [the banking corporations] without the approval or consent of either
[defendant licensors]." Id. at 1541. 
         As noted above, this is an agreed case. See Tex. R. Civ. P. 263. The only issue
on appeal is whether the trial court properly applied the law to the agreed facts. See
Kessler, 932 S.W.2d at 735. Although the FDIC was a party to the Settlement
Agreement, it was not a party to this case. Thus, the legal question of whether the
FDIC's agreement to the non-assignability clause in the Settlement Agreement controls
over FIRREA's assignability provision was not before the trial court. The legal question
before the trial court, and before this Court, is whether Alma's assignment of the
Second Note from the FDIC is valid. We consider significant that the Second Note did
not contain a non-assignability clause, did not reference the Settlement Agreement,
and on its face defined "holder" as including "assignees." 
         The Texas Supreme Court has held that FIRREA's provisions preempt
state law and extend to the FDIC's assignees. See, e.g., Jackson v. Thweatt,
883 S.W.2d 171, 174 (Tex. 1994) (holding that limitations provision of
section 1821(d)(14) of FIRREA is applicable to suit on note brought by
FDIC's assignee, preempts state four-year limitations period, and extends
limitation period to six years). Assignees of the FDIC benefit from two other
FIRREA provisions in addition to the six-year statute of limitations. First, assignees
of the FDIC receive the protection of the D'Oench, Duhme doctrine, which shields
assignees from defenses based on undocumented agreements. D'Oench, Duhme &
Co. v. FDIC, 315 U.S. 447, 548-61 (1942) (essentially codified at 12 U.S.C.A.
§ 1823(e) (West 2001)). Second, the related federal holder-in-due-course
doctrine allows assignees of the FDIC to become holders in due course in the
absence of technical compliance with the requirements of state law. See, e.g., Bailey,
Vaught, Robertson & Co. v. Remington Inv., Inc., 888 S.W.2d 860, 864 (Tex.
App.–Dallas 1994, no writ). We note that Alma did not plead the validity of its
assignment under FIRREA or cite section 1821(d)(2)(G)(i)(II) in its briefing to the trial
court. On appeal, neither party has analyzed FIRREA's application to the stipulated
facts of this case. However, under the less deferential standard we apply to our
review of this "agreed" case, Alma's pleadings are immaterial. See Highlands Ins. Co.,
950 S.W.2d at 417; see also Kessler, 932 S.W.2d at 735. In the absence of any non-assignability clause or reference to the Settlement Agreement in the Second Note and
considering the incorporation on its face of "assignees," we conclude that FIRREA
authorized the FDIC to assign the Second Note without Palmer's approval or consent.


 
See 12 U.S.C.A. § 1821(d)(2)(G)(i)(II) (West 2001); see also First Nationwide Bank,
770 F. Supp. at 1541 n.3. Accordingly, we hold that Alma's assignment of the
Second Note from the FDIC is valid. We sustain Alma's first issue. 
B. Attorney Fees
         Alma claims in its second issue that the trial court improperly awarded attorney
fees to Palmer. We agree.
         Statutory or contractual authority must form the basis of an award for
attorney fees. Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 1997); Holland v.
Wal-Mart Stores, Inc., 1 S.W.3d 91, 95 (Tex. 1999); Ed Rachal Found. v. D'Unger,
117 S.W.3d 348, 357 (Tex. App.–Corpus Christi 2003, pet. filed); see Dallas Cent.
Appraisal Dist. v. Seven Inv. Co., 835 S.W.2d 75, 77 (Tex. 1992) (citing New
Amsterdam Cas. Co. v. Tex. Indus., Inc. 414 S.W.2d 914, 914-16 (Tex. 1967))
(attorney fees may not be recovered unless provided for by statute or by contract
between parties). To recover attorney fees under section 38.001 of the civil
practice and remedies code, a party must: (1) prevail on a cause of action for
which attorney fees are recoverable; and (2) recover damages. Green Int'l v. Solis,
951 S.W.2d 384, 390 (Tex. 1997); D'Unger, 117 S.W.3d at 357; see Tex. Civ. Prac.
& Rem. Code Ann. § 38.001 (Vernon 1997). 
         Palmer's claim for attorney fees against Alma is based on his breach-of-contract and tortious-interference counterclaims. The judgment states that Palmer is
entitled to recover from Alma but awards only attorney fees. Palmer argues that the
attorney fees are damages. However, attorney fees are in the nature of costs, not
damages. See City of San Benito v. Ebarb, 88 S.W.3d 711, 723 n.15 (Tex.
App.–Corpus Christi 2002, pet. denied) (finding that sovereign immunity did not bar
recovery of attorney fees in declaratory-judgment action). Palmer did not prove or
recover any damages on either his breach-of-contract or tortious-interference causes
of action.


 Finally, we have reversed the trial court's legal conclusion that Palmer is
not liable to Alma on the Second Note. Accordingly, we hold that Palmer is not
entitled to recover attorney fees. See Green Int'l, 951 S.W.2d at 390. We sustain
Alma's second issue. 
IV. CONCLUSION
         We sustain both of Alma's issues. We reverse and remand for entry of
judgment consistent with this opinion. See Vinmar, Inc. v. Harris County Appraisal
Dist., 947 S.W.2d 554, 555 (Tex. 1997) (reversing rule 263 agreed case and
remanding for entry of judgment). 
 
                                                                        ERRLINDA CASTILLO
                                                                        Justice

Opinion delivered and filed
this 19th day of August, 2004.