ALMA GROUP, L.L.C., Appellant,

v.

Gamble J. PALMER and Jean T. Cravens, Appellees.

No. 13–02–088–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Aug. 19, 2004.

Rehearing Overruled Sept. 16, 2004.

Paul Webb, Wharton, Scott Walsh, Michael A. McGurk, Jarvis & Kittleman, McAllen, Vincent L. Marable III, Paul Webb, P.C., Wharton, for appellant.

John R. Griffith, Griffith Saenz & Hill LLP, McAllen, Moises M. Salas Jr., Law Office of John Ventura, PC, Brownsville, for appellees.

Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

### OPINION

Opinion by Justice CASTILLO.

This is a suit on a note. By two issues, appellant Alma Group, L.L.C. ("Alma"), holder of the note, appeals: (1) a take-nothing judgment in favor of the debtors, Gamble J. Palmer and Jean T. Cravens (collectively, "Palmer"), appellees; and (2) the trial court's award of attorney fees to Palmer. We reverse and remand.

### I. FACTS

On December 29, 1986, Palmer executed a real estate lien note, made payable to United Bank of Texas, in the amount of $160,000 (the "original note"). The State Banking Commissioner declared United Bank of Texas insolvent and appointed the

Federal Deposit Insurance Corporation ("FDIC") as receiver of the original note.

Palmer defaulted. The FDIC initiated non-judicial foreclosure proceedings. Palmer filed suit and obtained an order restraining the foreclosure. The FDIC removed the proceedings to the United States District Court for the Southern District of Texas in Corpus Christi, Texas. There, the parties dismissed the suit by agreement and entered into a Compromise Settlement Agreement (the "Settlement Agreement").

Pursuant to the Settlement Agreement, Palmer agreed to pay the FDIC $45,000 in cash and execute a promissory note in the amount of $125,000 payable to the FDIC (the "Second Note"). The Settlement Agreement contained an "agreed final judgment" clause that provided:

> 1.2 *Agreed Final Judgment.* As part of the consideration of this Agreement, Plaintiffs shall execute, through their counsel, the Agreed Final Judgment in the form attached hereto as Exhibit "A" and return the signed Agreed Final Judgment to FDIC's counsel prior to July 1, 1993. To the extent [the Lawsuit] cannot be reinstated and an Agreed Final Judgment entered therein, the FDIC will file (and Plaintiffs will not oppose) a new cause of action in the Southern District of Texas, Corpus Christi Division (the "New Lawsuit") setting forth substantially the same allegations as set forth in the Lawsuit. Contemporaneously with filing of the New Lawsuit, Palmer and Cravens will file an Original Answer, setting forth generally the same claims as previously raised in the

Lawsuit. The Parties will immediately thereafter file in the New Lawsuit, an Agreed Final Judgment in substantially the same form as the agreed final judgment.

The Settlement Agreement also contained a non-assignment clause that provided:

> 3.10 *Assignment.* Neither this Agreement nor any interest herein shall be assigned by any Party without the written consent of the other, except in the event of a statutorily created successor in interest to the FDIC.

On July 14, 1993, Palmer signed the Second Note, payable to the FDIC, in the amount of $125,000. The Second Note did not contain a non-assignment clause or reference the Settlement Agreement. It defined "holder" as including "heirs, executors, administrators, legal representatives, successors, assigns and beneficiaries."

In June 1995, the FDIC transferred the Second Note and the Settlement Agreement to Beal Bank ("Beal"). Palmer defaulted on the Second Note in November 1995. As a result of Palmer's default, Beal transferred the Second Note back to the FDIC in December 1997.

On September 30, 1998, the FDIC transferred all rights, title, and interest in the Second Note and the Settlement Agreement to Alma. Alma accelerated. On October 29, 2001, Alma sued Palmer for the balance of principal and accrued interest. Palmer counterclaimed, alleging breach of contract and tortious interference with contract against Alma. Pursuant to rule 11 of the Texas Rules of Civil Procedure,[1] Alma and Palmer filed a joint stipulation that recited the foregoing facts.[2] The par-

---

1. Tex.R. Civ. P. 11.

2. The parties also stipulated that: (1) the Second Note was lost and its whereabouts could

ties asked the trial court to decide the issues of law presented by the case on the stipulated facts. *See* Tex.R. Civ. P. 263. The stipulated facts included the following:

14. The parties stipulate that the FDIC and Alma did not seek or obtain written consent from Palmer as to the assignment of the [Second] Note and Settlement Agreement by the FDIC to Alma.

After hearing the stipulated evidence and arguments of counsel, the trial court concluded that Alma was entitled to take nothing and that Palmer was entitled to attorney fees. This appeal ensued.

## II. SCOPE AND STANDARD OF REVIEW

The judgment recites that "all relevant facts were stipulated to by the parties." [3] We first address the standards we apply when reviewing a judgment based on stipulated facts.

■■■ Stipulations in an agreed case are binding on the parties, the trial court, and the reviewing court. *M.J.R.'s Fare v. Permit & License Appeal Bd.*, 823 S.W.2d 327, 330 (Tex.App.-Dallas 1991, writ denied). We conclusively presume that the parties have brought all the facts necessary for the presentation of the case. *Cummins & Walker Oil Co., Inc. v. Smith*,

814 S.W.2d 884, 886 (Tex.App.-San Antonio 1991, no writ). We do not draw any inference or find any facts not embraced in the agreement. *Id.* We limit our review to the stipulated facts unless other facts are necessarily implied from the stipulated facts. *Highlands Ins. Co. v. Kelley–Coppedge, Inc.*, 950 S.W.2d 415, 417 (Tex.App.-Fort Worth 1997), *rev'd on other grounds*, 980 S.W.2d 462 (Tex.1998). We do not review the legal or factual sufficiency of the evidence in a case tried on stipulated facts. *City of Harlingen v. Avila*, 942 S.W.2d 49, 51 (Tex.App.-Corpus Christi 1997, writ denied). Rather, we review the trial court's order to determine whether the trial court correctly applied the law to the stipulated facts. *Id.; accord Thompson v. Cont'l Airlines*, 18 S.W.3d 701, 705 (Tex.App.-San Antonio 2000, no pet.); *Stewart v. Hardie*, 978 S.W.2d 203, 206 (Tex.App.-Fort Worth 1998, pet. denied); *Reed v. Valley Fed. Sav. & Loan Co.*, 655 S.W.2d 259, 264 (Tex.App.-Corpus Christi 1983, writ ref'd n.r.e.).

■■■ Our review is de novo in an agreed case. *Highlands Ins. Co.*, 950 S.W.2d at 417; *see also Orange County Appraisal Dist. v. Agape Neighborhood Improvement, Inc.*, 57 S.W.3d 597, 601 (Tex.App.-Beaumont 2001, pet. denied). A trial court has no discretion in deciding the law or its proper application. *Highlands*

not be determined; and (2) the agreed judgment described in the Settlement Agreement either was never created or was lost and never attached to the Settlement Agreement.

**3.** The stipulations were neither signed nor certified by the trial court as correct. We have held that strict compliance with rule 263 is not a prerequisite for an agreed case. *See* Tex.R. Civ. P. 263; *see also Reed v. Valley Fed. Sav. & Loan Co.*, 655 S.W.2d 259, 264 (Tex.App.-Corpus Christi 1983, writ ref'd n.r.e.) (if parties stipulate all facts, case may be treated as submission on agreed statement, and strict compliance with rule 263 is not required); *see also Abbott v. Blue Cross & Blue Shield of*

*Tex., Inc.*, 113 S.W.3d 753, 758 (Tex.App.-Austin 2003, pet. filed) (same) (citing *Lambda Constr. Co. v. Chamberlin Waterproofing & Roofing Sys., Inc.*, 784 S.W.2d 122, 125 (Tex. App.-Austin 1990, writ denied)); *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 735 (Tex. App.-Fort Worth 1996, writ denied) (same). This case was clearly tried on stipulated facts. We therefore consider this appeal as an agreed case under rule 263. Tex.R. Civ. P. 263; *Reed*, 655 S.W.2d at 263; *Henry S. Miller Co. v. Wood*, 584 S.W.2d 302, 303–04 (Tex.Civ.App.-Texarkana 1979), *aff'd*, 597 S.W.2d 332 (Tex.1980).

*Ins. Co.*, 950 S.W.2d at 417. Accordingly, we defer less to the trial court in "agreed" cases than in ordinary reviews. *Id.* In an appeal of an "agreed" case, there are no presumed findings in favor of the judgment, and the pleadings are immaterial. *Id.; Kessler*, 932 S.W.2d at 735.

### III.  ANALYSIS

#### A.  Validity of the Transfer

Alma asserts that as assignee of the FDIC, it obtained the right to enforce the Second Note. Palmer counters that the FDIC's assignment of the Second Note to Alma was invalid, arguing that the anti-assignment provision in the Settlement Agreement also applies to the Second Note.

A dispute over an anti-assignment provision also arose in *First Nationwide Bank v. Fla. Software Servs., Inc.*, 770 F.Supp. 1537 (D.Fla.1991). In *First Nationwide Bank*, two cases were consolidated for trial. *Id.* at 1539. In both cases, a banking corporation purchased the majority of the assets and liabilities belonging to an insolvent institution from the Federal Savings and Loan Insurance Association ("FSLIC"). *Id.* The insolvent institutions had contracted with the defendant licensors for the use of banking software. *Id.* Included within those contracts were anti-assignment provisions that prohibited assignment of the contracts without prior approval. *Id.* at 1539–40. The banking corporations did not seek prior approval. *Id.* at 1540. The defendant licensors asserted that the acquisitions breached the anti-assignment clauses. *Id.* They conditioned continued use of the software on increased licensing fees. *Id.* The banking corporations filed a declaratory judgment action against the defendant licensors, seeking a determination they were not in breach of the anti-assignment clauses. *Id.* at 1538–39.

The federal district court in *First Nationwide Bank* held that FSLIC's assignments of the license agreements did not breach the anti-assignment clauses. *Id.* at 1544. In reaching that conclusion, the court analyzed the effect of the Financial Institutions Reforms, Recovery and Enforcement Act of 1989 ("FIRREA") on the validity of the assignments. *Id.* at 1540. In particular, the court discussed section 1821(d)(2)(G)(i)(II) of title 12, which states that the FDIC may, as conservator or receiver, "transfer any asset or liability of the institution in default ... without any approval, assignment, or consent with respect to such transfer." 12 U.S.C.A. § 1821(d)(2)(G)(i)(II) (West 2001); *First Nationwide Bank*, 770 F.Supp. at 1541 n. 3. In determining that FIRREA authorized the assignments despite non-assignability language in the underlying contracts, the court looked to the purpose of the legislation:

> The statute was obviously passed with the public welfare in mind. According to a House Report on the subject of FIR-REA,
>
>> The interests of the American taxpayer demand an expedited resolution to the monumental problems involved with the unprecedented costs of dealing with hundreds of insolvent thrifts and the orderly disposition of the assets of these failed institutions.

*First Nationwide Bank*, 770 F.Supp. at 1540 (citations omitted). The court held that "12 U.S.C. § 1821(d)(2)(G)(II) authorized the FSLIC to transfer the License Agreements to [the banking corporations] without the approval or consent of either [defendant licensors]." *Id.* at 1541.

As noted above, this is an agreed case. *See* Tex.R. Civ. P. 263. The only issue on appeal is whether the trial court properly applied the law to the agreed facts. *See*

*Kessler,* 932 S.W.2d at 735. Although the FDIC was a party to the Settlement Agreement, it was not a party to this case. Thus, the legal question of whether the FDIC's agreement to the non-assignability clause in the Settlement Agreement controls over FIRREA's assignability provision was not before the trial court. The legal question before the trial court, and before this Court, is whether Alma's assignment of the Second Note from the FDIC is valid. We consider significant that the Second Note did not contain a non-assignability clause, did not reference the Settlement Agreement, and on its face defined "holder" as including "assignees."

The Texas Supreme Court has held that FIRREA's provisions preempt state law and extend to the FDIC's assignees. *See, e.g., Jackson v. Thweatt,* 883 S.W.2d 171, 174 (Tex.1994) (holding that limitations provision of section 1821(d)(14) of FIRREA is applicable to suit on note brought by FDIC's assignee, preempts state four-year limitations period, and extends limitation period to six years). Assignees of the FDIC benefit from two other FIRREA provisions in addition to the six-year statute of limitations. First, assignees of the FDIC receive the protection of the *D'Oench, Duhme* doctrine, which shields assignees from defenses based on undocumented agreements. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 448–61, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (essentially codified at 12 U.S.C.A. § 1823(e) (West 2001)). Second, the related federal holder-in-due-course doctrine allows assignees of the FDIC to become holders in due course in the absence of technical compliance with the requirements of state law. *See, e.g., Bailey, Vaught, Robertson & Co. v. Remington Inv., Inc.,* 888 S.W.2d 860, 864 (Tex.App.-Dallas 1994, no writ). We

note that Alma did not plead the validity of its assignment under FIRREA or cite section 1821(d)(2)(G)(i)(II) in its briefing to the trial court. On appeal, neither party has analyzed FIRREA's application to the stipulated facts of this case. However, under the less deferential standard we apply to our review of this "agreed" case, Alma's pleadings are immaterial. *See Highlands Ins. Co.,* 950 S.W.2d at 417; *see also Kessler,* 932 S.W.2d at 735. In the absence of any non-assignability clause or reference to the Settlement Agreement in the Second Note and considering the incorporation on its face of "assignees," we conclude that FIRREA authorized the FDIC to assign the Second Note without Palmer's approval or consent.[4] *See* 12 U.S.C.A. § 1821(d)(2)(G)(i)(II) (West 2001); *see also First Nationwide Bank,* 770 F.Supp. at 1541 n. 3. Accordingly, we hold that Alma's assignment of the Second Note from the FDIC is valid. We sustain Alma's first issue.

### B. Attorney Fees

Alma claims in its second issue that the trial court improperly awarded attorney fees to Palmer. We agree.

Statutory or contractual authority must form the basis of an award for attorney fees. TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1997); *Holland v. Wal–Mart Stores, Inc.,* 1 S.W.3d 91, 95 (Tex. 1999); *Ed Rachal Found. v. D'Unger,* 117 S.W.3d 348, 357 (Tex.App.-Corpus Christi 2003, pet. filed); *see Dallas Cent. Appraisal Dist. v. Seven Inv. Co.,* 835 S.W.2d 75, 77 (Tex.1992) (citing *New Amsterdam Cas. Co. v. Tex. Indus., Inc.* 414 S.W.2d 914, 914–16 (Tex.1967)) (attorney fees may not be recovered unless provided for by statute or by contract between parties). To recover attorney fees under section 38.001 of the civil practice and remedies code, a

---

4. This agreed case does not present, and we do not address, the question of whether the FDIC breached the Settlement Agreement by assigning it to Alma.

party must: (1) prevail on a cause of action for which attorney fees are recoverable; and (2) recover damages. *Green Int'l v. Solis*, 951 S.W.2d 384, 390 (Tex.1997); *D'Unger*, 117 S.W.3d at 357; *see* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1997).

Palmer's claim for attorney fees against Alma is based on his breach-of-contract and tortious-interference counterclaims. The judgment states that Palmer is entitled to recover from Alma but awards only attorney fees. Palmer argues that the attorney fees are damages. However, attorney fees are in the nature of costs, not damages. *See City of San Benito v. Ebarb*, 88 S.W.3d 711, 723 n. 15 (Tex.App.-Corpus Christi 2002, pet. denied) (finding that sovereign immunity did not bar recovery of attorney fees in declaratory-judgment action). Palmer did not prove or recover any damages on either his breach-of-contract or tortious-interference causes of action.[5] Finally, we have reversed the trial court's legal conclusion that Palmer is not liable to Alma on the Second Note. Accordingly, we hold that Palmer is not entitled to recover attorney fees. *See Green Int'l*, 951 S.W.2d at 390. We sustain Alma's second issue.

## IV.  CONCLUSION

We sustain both of Alma's issues. We reverse and remand for entry of judgment consistent with this opinion. *See Vinmar, Inc. v. Harris County Appraisal Dist.*, 947 S.W.2d 554, 555 (Tex.1997) (reversing rule 263 agreed case and remanding for entry of judgment).

---

5. Further, there is no statutory or contractual basis for recovery of attorney fees for a tortious-interference claim. *Ed Rachal Found. v. D'Unger*, 117 S.W.3d 348, 357 (Tex.App.-Corpus Christi 2003, pet. filed) (citing *Martin–Simon v. Womack*, 68 S.W.3d 793, 797 (Tex.App.-Houston [14th Dist.] 2001, pet. denied)).