

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-171-CV

LAVERNE RALL GUNDERSON

APPELLANT
AND APPELLEE

V.

WELLS FARGO BANK, N.A.

APPELLEE
AND APPELLANT

------------

FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Laverne Rall Gunderson and Wells Fargo Bank, N.A. both filed appeals from a final judgment. The final judgment incorporated the trial court's interlocutory orders granting partial summary judgment in favor of Wells Fargo, denying Gunderson's motion for summary judgment, and awarding Wells Fargo attorney's

---

[1] *See* Tex. R. App. P. 47.4.

fees. In two issues, Gunderson argues that the trial court erred by granting Wells Fargo's motion for summary judgment while denying hers and that the trial court erred by awarding attorney's fees to Wells Fargo. In one issue, Wells Fargo argues that the trial court erred by placing a limitation on the manner in which Wells Fargo could collect upon the attorney's fees judgment against Gunderson. We will affirm.

## II. BACKGROUND

Until recently, Gunderson, a resident of Crowley, Texas, maintained both a savings account and a checking account with Wells Fargo. In late March 2008, the California State Board of Equalization ("Board") sent a notice of levy to Wells Fargo seeking payment of funds from Gunderson's bank accounts. The notice of levy related to alleged unpaid taxes owed by Gunderson's husband in California. The levy also included an accompanying affidavit by one of the Board's tax compliance specialists attesting to the tax levy's authenticity. At the time of the notice, Gunderson's bank account balances totaled $6,839.31.

In response to the notice of levy, Wells Fargo debited Gunderson's accounts and sent all funds in the accounts to the Board. Additionally, Wells Fargo forwarded the notice of levy to Gunderson, notified her that her accounts had been debited, and informed her that if she had any objections to the levy, she should contact the Board. Wells Fargo then charged Gunderson a $100 fee against her accounts relating to its response to the notice of levy.

2

Gunderson filed a breach of contract claim against Wells Fargo. In her petition, Gunderson argued that the Board did not have legal authority to debit monies from her accounts held in her name, that the Board did not have jurisdiction over her husband to pursue a tax debt, and that Wells Fargo had breached its contract with her by refusing her demands for the funds and paying them to the Board. Furthermore, Gunderson argued that any conduct by Wells Fargo based on the Board's request is not excused. Gunderson filed a motion for summary judgment on her breach of contract claim and also asked for attorney's fees.

Wells Fargo responded with its own motion for summary judgment, contending, among other arguments, that it was entitled to act upon the notice of levy under the consumer account agreement between itself and Gunderson. Furthermore, Wells Fargo alleged that, per the agreement, it was entitled to attorney's fees incurred in responding to Gunderson's lawsuit. The consumer account agreement states in part:

> **Legal Process.** The Bank may accept and act on any legal process that it believes is valid, whether served in person, by mail or by electronic notification, at any location of the Bank. "Legal Process" includes a levy, garnishment or attachment, tax levy or withholding order, injunction, restraining order, subpoena, search warrant, government agency request for information, forfeiture, seizure, or other legal process relating to your Account. Any such legal process is subject to the Bank's security interest and right of setoff. The Bank will not notify you of a grand jury subpoena affecting you or your Account. Any fees or expenses (including attorney's fees and expenses) the Bank incurs in responding to any such legal process may be charged against any account you maintain with the Bank.

3

The trial court granted Wells Fargo's summary judgment motion pertaining to its defense that it was entitled to act upon the notice of levy. The trial court denied Gunderson's motion for summary judgment. The trial court then held a hearing regarding the propriety of Wells Fargo recovering attorney's fees. Neither party requested that a reporter's record be made of this hearing. The trial court found that the consumer account agreement entitled Wells Fargo to recover attorney's fees relating to this lawsuit but limited the manner in which those fees could be collected to charging against Gunderson's accounts at Wells Fargo only. This appeal followed.

## III. DISCUSSION

### A. Wells Fargo was contractually entitled to respond to the levy

In her first issue, Gunderson argues that the trial court erred by granting Wells Fargo's summary judgment and denying her own. Specifically, Gunderson argues that because a California court eventually found that California, and thus the Board, did not have personal jurisdiction over her husband to pursue unpaid taxes, Wells Fargo wrongfully paid monies from her accounts to the Board. Furthermore, Gunderson argues that the consumer account agreement states that the laws of Texas control over any agreement between herself and Wells Fargo; thus, Wells Fargo's reliance on the notice of levy, predicated on California law, would be erroneous.

Wells Fargo responds that Gunderson's argument pertaining to the properness of its response to the notice of levy—and what laws apply to the levy—are unavailing because the consumer account agreement specifically provides that Wells Fargo may act upon "any legal process that it believes is valid" and that the agreement specifically includes Wells Fargo's right to respond to a tax levy. Wells Fargo also argues that it was legally required to comply with the levy. We agree with Wells Fargo that it was contractually entitled to respond to the tax levy.

### 1. Standard of review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Mann Frankfort*, 289 S.W.3d at 848.

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848.

5

We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). When the trial court's judgment rests upon more than one independent ground or defense, the aggrieved party must assign error to each ground, or the judgment will be affirmed on the ground to which no complaint is made. *Scott v. Galusha*, 890 S.W.2d 945, 948 (Tex. App.—Fort Worth 1994, writ denied).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann*

*Frankfort*, 289 S.W.3d at 848.  The reviewing court should render the judgment that the trial court should have rendered.  *Id*.

### 2.    The consumer account agreement

A deposit contract between a bank and an account holder is considered a contract in writing for all purposes.  Tex. Fin. Code Ann. § 34.301(a) (Vernon Supp. 2009). The elements of a breach of contract claim are (1) a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach by the defendant, and (4) damages sustained by the plaintiff as a result of the breach. *Harris v. Am. Prot. Ins. Co.*, 158 S.W.3d 614, 622–23 (Tex. App.—Fort Worth 2005, no pet.).  In suits to recover deposits, the bank has the burden of proving payment under authority from the depositor and is obligated to pay out funds on deposit according to the directions of the depositor. *Mesquite State Bank v. Prof'l Inv. Corp.*, 488 S.W.2d 73, 75 (Tex. 1972).  To this end, a bank is entitled to rely on its deposit agreement when determining to whom it is indebted.  *Bank One, Tex., N.A. v. Sunbelt Sav., F.S.B.*, 824 S.W.2d 557, 557 (Tex. 1992); *Whitney Nat'l Bank v. Baker*, 122 S.W.3d 204, 207 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

In this instant case, Gunderson and Wells Fargo have a consumer account agreement that specifically entitles Wells Fargo to "act on any legal process" it believes to be valid.  In the agreement, a tax levy is defined as a legal process. After receiving the tax levy—and accompanying affidavit by one of the Board's tax compliance specialists attesting to the tax levy's authenticity—Wells Fargo acted

upon the tax levy. Wells Fargo was entitled to rely upon the consumer account agreement and satisfied its burden of proving payment under Gunderson's authority. Thus, the trial court did not err by finding that Wells Fargo met its summary judgment burden by establishing that no genuine issue of material fact exists that it made payment to the Board under Gunderson's authority and that Wells Fargo is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c). We overrule Gunderson's first issue.

### B.     Attorney's fees and Wells Fargo's $100 fee

In her second issue, Gunderson argues that the trial court erred by awarding attorney's fees to Wells Fargo. Gunderson essentially makes two arguments as to why she believes Wells Fargo is not entitled to recover attorney's fees in this case. First, Gunderson argues that there is no record demonstrating sufficient evidence to support the awarding of attorney's fees to Wells Fargo.

In her briefing to the trial court regarding attorney's fees—after the trial court had granted Wells Fargo's summary judgment and in anticipation of the pending hearing regarding attorney's fees—Gunderson argued only that Wells Fargo was not entitled to attorney's fees under the consumer account agreement. Gunderson did not complain of a lack of evidence supporting Wells Fargo's attorney's fees nor did Gunderson object to the upcoming hearing on attorney's fees. Furthermore, Gunderson did not file any post-judgment motions bringing to the trial court's attention any alleged error in the evidence supporting the trial court's awarding Wells

8

Fargo's attorney's fees. As such, Gunderson has not preserved this alleged error. *See Reagan Nat'l Adver. of Austin, Inc. v. Capital Outdoors, Inc.*, 96 S.W.3d 490, 497 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.) (waiver where party failed to complain about insufficiency of evidence at hearing on attorney's fees and did not file a motion for a new trial or any other post-judgment motion bringing its complaint to the trial court's attention). But Gunderson did complain about the propriety of Wells Fargo being entitled to attorney's fees under the consumer account agreement—her second argument under this issue. Therefore, we turn to the question of whether Wells Fargo was entitled to attorney's fees under the consumer account agreement.

Under Texas statutory law, a party may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for breach of an oral or written contract. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 2008). The phrase in the statute which reads "in addition to the amount of a valid claim" implies that a party must first have been awarded damages before it may be awarded attorney's fees. *Green Int'l v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997); *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex. 1995). Therefore, generally, attorney's fees may not be recovered for successfully defending a breach of contract claim. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 201 (Tex. 2004).

9

But parties to a contract may also recover attorney's fees if they arrange for such recovery as a contractual term. *Alma Group, L.L.C. v. Palmer*, 143 S.W.3d 840, 845 (Tex. App.—Corpus Christi 2004, pet. denied) (citing *New Amsterdam Cas. Co. v. Tex. Indus., Inc.*, 414 S.W.2d 914, 915 (Tex. 1967)). The parties to the contract may create their own terms, which need not correspond to chapter 38 of the civil practice and remedies code. *See Wayne v. A.V.A. Vending, Inc.*, 52 S.W.3d 412, 417 (Tex. App.—Corpus Christi 2001, pet. denied) (citing *One Call Sys., Inc. v. Houston Lighting & Power*, 936 S.W.2d 673, 676 (Tex. App.—Houston [14th Dist.] 1996, writ denied)). The parties may agree to terms for the recovery of fees that are either more or less liberal than the terms presented in chapter 38. *Wayne*, 52 S.W.3d at 417–18. In such cases, it is the language of the contract, not the statute, that governs. *Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc.*, 938 S.W.2d 102, 118 (Tex. App.—Houston [14th Dist.] 1996, no writ). Furthermore, it is the language of the agreement itself—not the present interpretation of the parties—that determines the intent of the parties, and the agreement must be enforced as written. *Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 121 (Tex. App.—Corpus Christi 1999, pet. denied).

We agree with Wells Fargo that it was entitled to rely upon the consumer account agreement in seeking attorney's fees in addition to charging Gunderson a $100 fee for responding to the levy. The agreement specifically states, "Any fees or expenses (including attorney's fees and expenses) the Bank incurs in responding to

10

any such legal process may be charged against any account you maintain with the Bank." The phrase "[a]ny fees or expenses" contemplates that there could be both fees and expenses—including attorney's fees. Thus, this provision serves as the contractual basis for the $100 charge against Gunderson and the trial court's determination that Wells Fargo was entitled to attorney's fees as a result of responding to Gunderson's breach of contract claim. Therefore, we overrule Gunderson's second issue in its entirety.

###### C.    Wells Fargo is limited in the manner by which it may collect the contracted-for attorney's fees

We now address Wells Fargo's sole issue on appeal—whether the trial court erred by limiting the manner in which Wells Fargo could collect its attorney's fees. We conclude that the trial court was correct in limiting Wells Fargo's ability to collect on the attorney's fees by only charging against an account Gunderson maintains at a Wells Fargo bank.

By the consumer account agreement's own terms, Wells Fargo was entitled to collect attorney's fees it incurred "responding to any such legal process." The agreement further states that such fees "may be charged against any account you maintain with the Bank." Thus, Wells Fargo contracted specific language detailing the *only* manner in which it could collect attorney's fees once it responded to a legal process. Our text-based construction of this agreement is consistent with the principle of *expressio unius est exclusio alterius*, meaning that the naming of one

11

implies the exclusion of others. *See CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655 (Tex. 1987) (explaining doctrine of *expressio unius est exclusio alterius*); *see also Mid-Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 273 (Tex. 1999) (same). This maxim applies perfectly to the consumer account agreement at issue in this case. By its terms, the agreement covers only one manner by which Wells Fargo is entitled to collect attorney's fees for responding to the legal process it was faced with—the tax levy sent to it by the Board. By specifically including this manner only—and purposely excluding all other manners of pursuing fees—the parties in this case contracted the only manner by which Wells Fargo could collect its fees (including attorney's fees) incurred in responding to this legal process. Thus, we hold that the trial court did not err by limiting Wells Fargo's ability to collect on the attorney's fees by only charging against an account Gunderson maintains at Wells Fargo. We overrule Wells Fargo's sole issue.

## IV. CONCLUSION

Having overruled both of Gunderson's issues and having also overruled Wells Fargo's sole issue, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: WALKER, MCCOY, and MEIER, JJ.

DELIVERED: July 1, 2010

12