

# NUMBER 13-09-00610-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**HUMBERTO A. RANGEL,**                                 **Appellant,**

**v.**

**NUECES COUNTY,**                                       **Appellee.**

---

## On appeal from the County Court at Law No. 2 of Nueces County, Texas.

---

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Benavides
### Memorandum Opinion by Chief Justice Valdez

By two issues, appellant, Humberto A. Rangel, challenges the trial court's summary judgment in favor of appellee, Nueces County, and its denial of his cross-motion for summary judgment. We affirm in part and reverse in part and remand.

## I.    BACKGROUND[1]

On December 16, 2003, Rangel sustained an injury to his lower back while working for Nueces County as a mechanic's assistant.[2]   On December 23, 2003, Rangel went to the emergency room at Christus Spohn Shoreline Hospital complaining of severe pain in his lower back.[3]   Eisen Espina, M.D., the attending physician at Spohn, ordered an MRI of Rangel's lower back.   Kenneth Vanexan generated a radiology report on December 29, 2003, documenting that Rangel suffered from the following:

> Moderate central and right-sided disk protrusion at L5-S1 with a component of annular tear at that level.

> Disk bulge changes at L4-5 with facet joint arthropathy[4] resulting in moderate spinal stenosis[5] at that level.

> Disk herniation with extrusion centrally and to the right of midline at L3-4 with bony spinal canal borderline in size at that level.

---

[1] The parties filed with the trial court an agreed statement of facts pursuant to rule 263, asking the trial court to determine their cross-motions for summary judgment only on those facts and attached exhibits.  *See* TEX. R. CIV. P. 263 ("Parties may submit matters in controversy to the court upon an agreed statement of facts filed with the clerk, upon which judgment shall be rendered as in other cases; and such agreed statement signed and certified by the court to be correct and the judgment rendered thereon shall constitute the record of the cause."). Those facts are binding on this Court.  *M.J.R.'s Fare v. Permit & License Appeal Bd.*, 823 S.W.2d 327, 330 (Tex. App.–Dallas 1991, writ denied) (explaining that stipulations in an agreed case are binding on the parties, the trial court, and the reviewing court). Therefore, we have relied only on those stipulated facts and exhibits for purposes of this memorandum opinion.  *See Tex. Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W.3d 123, 125 n.2 (Tex. 2004) (explaining that pursuant to rule 263, the agreed statement of facts and the judgment constitute the record; therefore the court would only "look to those sources to determine the question presented").

[2] Rangel had been a Nueces County employee since November 22, 1999.

[3] Rangel filed a worker's compensation claim for his December 16, 2003 injury.  Nueces County, a self-insured carrier providing workers' compensation coverage to its employees, determined that a compensable injury had occurred and paid workers' compensation benefits to Rangel pursuant to section 504.011(3) of the labor code.  *See* TEX. LAB. CODE ANN. § 504.011(3) (Vernon 2006).

[4] "Arthropathy" is "a disease of a joint."  *Merriam-Webster Online Dictionary*, *available at* http://www.merriam-webster.com/dictionary/arthropathy (last visited Feb. 25, 2011).

[5] "Stenosis" is "a narrowing or constriction of the diameter of a bodily passage or orifice."  *Id.* at http://www.merriam-webster.com/dictionary/stenosis (last visited Feb. 25, 2011).

2

John M. Borkowski, M.D. reviewed Rangel's MRI and concluded that it "revealed multilevel lumbar degenerative disc disease with a right sided disc protrusion at L5-S1 and evidence of [an] annular tear with disc bulge changes at L4-5 with facet arthropathy and also a disc herniation with extrusion centrally to the right of midline at L3-4." Dr. Borkowski recommended a pain management consultation, consideration of epidural steroid injection with medication, and physical therapy as tolerated.[6]

Ryan N. Potter, M.D. administered a lumbar epidural steroid injection on Rangel's back "at the lowest level possible . . . aim[ing] for the L5-S1 area . . . ." Dr. Potter noted that he would follow up with Rangel after forty-eight to seventy-two hours and that if Rangel did not improve after one or two epidurals, Rangel "would be a good candidate for a discogram to further elucidate what disc level is actually causing his pathology and then treatment as such, depending on the results, either an intradiscal procedure or invasive surgical procedure . . . ."

On October 4, 2004, Rangel went to the emergency room complaining of muscle spasms and severe back pain, which began after he exited a swimming pool while performing exercises as part of his treatment plan for his back injury. Rangel was prescribed additional physical therapy and "received treatment, as an exacerbation of the original injury" sustained on December 16, 2003.[7]

On May 26, 2006, Rangel went to the emergency room and stated that when he stood up from the commode, he felt an unbearable lower back pain. Dr. Thomas

---

[6] Dr. Borkowski stated that "any type of surgical intervention would require multilevel effusion, this is something that, of course, we would like to avoid . . . ."

[7] Nueces County concedes in its brief that Rangel was treated for this incident "as a flare-up of the original injury" sustained on December 16, 2003.

Chodosh, D.O., Rangel's treating physician, reported in the hospital's admitting notes, that Rangel was admitted for acute lumbosacral pain.[8] Dr. Chodosh noted that he had last seen Rangel for a lumbosacral strain in October 2004. According to Dr. Chodosh, Rangel had "been having lumbosacral spine discomforts bothering him off and on periodically" and had "gone to the emergency room one time since 10/04 for a pain injection." Dr. Chodosh scheduled a follow-up examination with Rangel on May 30, 2006, in order to reevaluate Rangel's condition and "schedule a possible MRI of the lumbosacral spine on an outpatient basis."

In a report responding to an inquiry from Nueces County personnel dated June 19, 2006, Dr. Chodosh opined that the May 26, 2006 back pain was not related to the injury Rangel sustained on December 23, 2003. Dr. Chodosh stated that the basis for his opinion was that Rangel "had no medical care since his dismissal and full release on October 25, 2004," and that Rangel said his emergency room visit made after October 2004, "was not considered to be work related and was not reported to be work related to his employer or to the emergency room personnel."

Jairo Puentes, M.D. examined Rangel on July 17, 2006.[9] Dr. Puentes generated a report stating:

> [Rangel] states he initially developed low back pain after he checked the air filter on a vehicle. He states he closed the hood and felt stabbing back pain to his lower back which he states took his breath away. He was evaluated at Christus Spohn [H]ospital where he was admitted from 12/26/2003 through 01/02/2003. He was given an epidural steroid injection. While he was in the hospital he had a series of x-rays and MRI scans. He was released and received two additional epidural steroid

---

[8] "Lumbosacral" means "relating to the lumbar and sacral regions or parts." *Id.* at http://www.merriam-webster.com/dictionary/lumbosacral (last visited Feb. 25, 2011).

[9] The parties stipulated in their agreed statement of facts that Dr. Puentes was Nueces County's Required Medical Examiner.

4

injections by Dr. Potter. He says he received five months [of] physical therapy and returned back to work. He says he has had flare ups of low back pain since. His last flare up was on 05/26/2006, where again he ended up in the hospital . . . . His claim [to his insurance company] is being disputed because insurance company says this is not related to the injury of 12/16/2003.

Dr. Puentes further stated:

1). Rangel continues with intermittent episodes of low back pain. . . . I believe his most recent episode of pain [on May 26, 2006,] is an exacerbation of the original injury dated 12/16/2003.

. . . .

3). The documentation supports a causal relationship between [Rangel's] diagnosis and the reported compensable [12/16/2003] injury. . . . Rangel recovered from the 1st episode but continued with exacerbations. The MRI clearly states he had herniated (extruded) disc at the time of his [12/16/2003] injury. This herniation is still present and has not been resolved.

4). The MRI is positive for a HNP at L3-4. He also has compression of L4. This is an objective test that supports the complaints and diagnosis.

5). The treatment has been conservative to this date and has been reasonable and necessary and related to the compensable injury of 12/16/2003.

On March 24, 2008, Rangel had lumbar surgery at L2-L3, L4-L5, and L5-S1. His doctor reported that Rangel stated that he "is doing better" after the surgery.

## II. PROCEDURAL HISTORY

On September 26, 2006, the Texas Department of Insurance Division of Workers' Compensation ("DWC") held a contested benefit case hearing to decide whether "the compensable injury of December 16, 2003, include[d] an injury consisting of a muscle ligamentous strain of the lumbar spine, myofascitis[10] of the lumbar spine,

_____

[10] "Myofascitis" is defined as an "inflammation of a muscle and its fascia." *Encyclo Online Encyclopedia*, *available at* http://www.encyclo.co.uk/define/myofascitis (last visited Feb. 25, 2011).

herniated nucleus pulposus[11] at the L3-L4 level of the lumbar spine and L4 radiculpathy[12] after May 26, 2006." After considering reports and opinions from Dr. Chodosh, and Dr. Puentes, the DWC found that: Rangel sustained a low back strain and herniated nucleus pulposus at the L3-L4 level as a result of the compensable injury of December 16, 2003; Rangel did not seek medical treatment for the compensable injury of December 16, 2003 after October 25, 2004; Rangel sustained a new injury to the low back on May 26, 2006; and Rangel's "muscle ligamentous strain of the lumbar spine, myofascitis of the lumbar spine, herniated nucleus pulposus at the L3-L4 level of the lumbar spine and L4 radiculopathy after May 26, 2006, is not a result of the work related injury sustained on December 16, 2003." The DWC ruled that Nueces County was not liable for providing benefits regarding Rangel's May 26, 2006 injury.[13]

Rangel filed his original petition on February 7, 2007 in the trial court challenging the DWC's decision and claiming that Nueces County was liable for providing medical benefits for treatment on and after May 26, 2006. *See* TEX. LAB. CODE ANN. § 410.251 (Vernon 2006) (providing that party that has exhausted administrative remedies under statutory scheme entitled to judicial review). The parties agreed to submit the matter to the trial court on cross-motions for summary judgment based on an agreed statement of

---

[11] "Nucleus pulposus" is defined as "an elastic pulpy mass lying in the center of each intervertebral fibrocartilage and regarded as a remnant of the notochord." *Merriam-Webster Online Dictionary*, *available at* http://www.merriam-webster.com/medical/pulposus (last visited Feb. 25, 2011).

[12] "Radiculpathy" is defined as "irritation of or injury to a nerve root (as from being compressed) that typically causes pain, numbness, or weakness in the part of the body which is supplied with nerves from that root." *Id.* at http://www.merriam-webster.com/dictionary/radiculopathy (last visited Feb. 25, 2011).

[13] The DWC held that Rangel "remained entitled to medical benefits for the compensable injury . . . ."

6

facts.[14]  Nueces County filed a motion for summary judgment contending that the injury was not compensable as a matter of law.  Nueces County argued that the May 26, 2006 incident constituted a "new injury" or aggravation of an injury; Rangel sustained the new injury or aggravation of a prior injury while at his home; and any medical treatment provided after May 26, 2006, was required only as a result of the new injury or aggravation.

Rangel filed a response to Nueces County's motion for summary judgment and a cross-motion for summary judgment.  Rangel contended that no genuine issue of material fact existed that his "continuing medical expenses can only be attributed to his compensable injury sustained in [December 2003] while working for Nueces County."  Specifically, Rangel pointed to, among other things, the reports written by Michael J. Pendleton, M.D., Dr. Chodosh, and Dr. Puentes.[15]  Rangel argued Dr. Chodosh's opinion was unreliable because it was not supported by any clinical or diagnostic exams; it was contradictory; and Dr. Chodosh ignored the objective diagnostic exams and other physicians' findings.  Therefore, he argued that Dr. Chodosh's reports were "insufficient to raise any genuine issue of material fact on the existence of a 'new' injury or aggravation as defined in workers' compensation law."

On August 3, 2009, the trial court denied Rangel's motion for summary judgment finding "that the evidence establishes that there are material and disputed fact issues . . . ."  On the same day, the trial court, in its final take-nothing judgment, granted Nueces County's motion for summary judgment.  This appeal ensued.

---

[14] *See* TEX. R. CIV. P. 263.

[15] We note that Dr. Pendleton's letter was not attached as an exhibit to the parties' agreed statement of facts.  Therefore, we will not consider it on appeal.

7

### III. STANDARD OF REVIEW

In a traditional motion for summary judgment, the movant has the burden to establish that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing TEX. R. CIV. P. 166a(c)); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). A defendant seeking a traditional motion for summary judgment must either disprove at least one element of each of the plaintiff's causes of action or plead and conclusively establish each essential element of any affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam); *Sanchez v. Matagorda County*, 124 S.W.3d 350, 352 (Tex. App.–Corpus Christi 2003, no pet.). "A plaintiff who moves for summary judgment must prove he is entitled to judgment as a matter of law on each element of the cause of action." *Fry v. Comm'n for Lawyer Discipline*, 979 S.W.2d 331, 334 (Tex. App.–Houston [14th Dist.] 1998, pet. denied) (citing *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986); *Harris County v. Walsweer*, 930 S.W.2d 659, 663 (Tex. App.–Houston [1st Dist.] 1996, writ denied); *Acme Brick v. Temple Assocs., Inc.*, 816 S.W.2d 440, 442 (Tex. App.–Waco 1991, writ denied)).

We review the granting of a traditional motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.–Corpus Christi 2003, no pet.). "[W]e take as true all evidence favorable to the non[-]movant, and we indulge every reasonable inference and resolve any doubts in the non[-]movant's favor." *Valence Operating Co.*, 164 S.W.3d at 661. When, as in this case, the trial court does not state the grounds upon which

8

summary judgment was granted, we must affirm the judgment if any of the grounds advanced in the motion for summary judgment are meritorious. *Branton*, 100 S.W.3d at 647 (citing *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)).

When both sides move for summary judgment and the trial court grants one motion and denies the other, we consider all the evidence accompanying both motions to determine whether the trial court should have granted either motion and, on finding error, render the judgment the trial court should have rendered. *Ranger Ins. Co. v. Ward*, 107 S.W.3d 820, 824 (Tex. App.–Texarkana 2003, pet. denied). We must remand the case to the trial court if neither movant is entitled to summary judgment. *Employers Reins. Corp. v. Gordon*, 209 S.W.3d 913, 917 (Tex. App.–Texarkana 2006, no pet.); *Ward*, 107 S.W.3d at 824.

## IV. DISCUSSION

By his first issue, Rangel contends that the trial court erred in granting Nueces County's motion for summary judgment because Dr. Chodosh's opinion was not admissible, and even if Dr. Chodosh's opinion was admissible, there was no evidence that Rangel sustained a "new injury in 2006." By his second issue, Rangel contends that the trial court erred in denying his cross-motion for summary judgment because "the uncontroverted evidence established that his 2003 work-related injury was the producing cause of his lower back injury and the diagnosed HNP."

## A. Admissibility of Dr. Chodosh's Reports

In this case, the parties filed an agreed statement of facts pursuant to rule 263 stating:

> The parties have agreed to submit this matter to the Court on Cross-Motions for Summary Judgment based on the facts set forth herein.

The Parties agree that these facts and attached exhibits are all the facts of the case. . . . . In accordance with Texas Rule of Civil Procedure 263, the Parties agree that the following facts as well as exhibits attached hereto are true and correct copies, and are incorporated by reference the same as if fully set forth herein:

. . . .

Dr. Chodosh found that [Rangel] sustained a new injury on May 26, 2006, and did not sustain a flare-up of the December 16, 2003 compensable injury, because [Rangel] had been performing his regular work duties and had not sought medical treatment since October 25, 2004.

. . . .

Dr. Puentes found that [Rangel] sustained a flare-up of the December 16, 2003 injury, because the pain was in the same location, and had a similar diagnosis to the original injury.

The parties further stated in their agreed statement of facts that "these facts and exhibits are the facts and exhibits upon which this [summary judgment] is to be tried." The parties attached Dr. Chodosh's and Dr. Puentes's medical reports to the agreed statement of facts. The parties further requested that the trial court "enter its judgment [regarding the cross-motions for summary judgment] based on these agreed facts which have been submitted by the parties."

Stipulations in an agreed case are binding on the parties, the trial court, and the reviewing court. *Alma Group L.L.C. v. Palmer*, 143 S.W.3d 840, 843 (Tex. App.–Corpus Christi 2004, pet. denied); *M.J.R.'s Fare v. Permit & License Appeal Bd.*, 823 S.W.2d 327, 330 (Tex. App.–Dallas 1991, writ denied); *see Tex. Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W.3d 123, 125 n.2 (Tex. 2004); *Diamond Shamrock Ref. and Mktg. Co. v. Nueces County Appraisal Dist.*, 876 S.W.2d 298, 301 n.2 (Tex. 1994) (recognizing that the court of appeals made an impermissible inference that conflicted with the facts

10

as stipulated by the parties in their statement of agreed facts under rule 263); *Lawler v. Lomas & Nettleton Mortgage Investors*, 691 S.W.2d 593, 595 (Tex. 1985) ("An appellate court, in reviewing a case tried upon an agreed statement of facts, is not permitted to draw any inference or find any fact not embraced in the agreement unless as a matter of law such further inference or fact is necessarily compelled by the agreed upon evidentiary facts."). The question on appeal is therefore limited to the correctness of the trial court's application of the law to the admitted facts. *City of Corpus Christi v. Gomez*, 141 S.W.3d 767, 770 (Tex. App.–Corpus Christi 2004, no pet.); *Unauthorized Practice of Law Comm. v. Jansen*, 816 S.W.2d 813, 814-15 (Tex. App.–Houston [14th Dist.] 1991, writ denied).

Because Rangel stipulated that Dr. Chodosh "found that [Rangel] sustained a new injury on May 26, 2006," that fact is binding on Rangel and this Court for purposes of summary judgment. *See Alma Group L.L.C.*, 143 S.W.3d at 843; *M.J.R.'s Fare*, 823 S.W.2d at 330; *see also Perry v. Brooks*, 808 S.W.2d 227, 229 (Tex. App.–Houston [14th Dist.] 1991, no writ) ("A stipulation is an agreement, admission or concession made in the course of a judicial proceeding by parties. . . . As such, stipulations enjoy equal dignity with judicial admissions, which eliminate an adversary's necessity of proof and establish the admitted elements as a matter of law.") (internal citations omitted). Furthermore, Rangel agreed that the case would be tried upon the agreed attached exhibits, including Dr. Chodosh's report. Therefore, because Rangel agreed that the trial court could consider the attached exhibits for purposes of the summary judgment, he may not now challenge Dr. Chodosh's report. We overrule Rangel's first issue to the extent that he argues that we must exclude Dr. Chodosh's opinion. *See Reed v. Valley*

11

*Fed. Sav. & Loan Co.*, 655 S.W.2d 259, 264 (Tex. App.–Corpus Christi 1983, writ ref'd n.r.e.) ("[T]he trial court and the reviewing court are limited to the agreed facts and cannot make any findings of fact which do not conform to the stipulated facts.").

## B.      Genuine Issue of Material Fact

Rangel filed his petition with the county court seeking review of DWC's conclusion that "the compensable injury of December 16, 2003 did not include the same injuries sustained by [Rangel] on May 26, 2006." *See* TEX. LAB. CODE ANN. § 408.021 (Vernon 2006) ("An employee who sustains a compensable injury is entitled to all health care reasonably required by the nature of the injury as and when needed"). Nueces County moved for summary judgment on the basis that there was no genuine issue of material fact concerning whether the 2006 injury was a new injury or whether it was related to the 2003 injury. Rangel filed a response to Nueces County's motion and a cross-motion for summary judgment on the basis that there was no genuine issue of material fact concerning whether the 2003 compensable injury was the producing cause of the pain he felt on May 26, 2006. Therefore, the issue before the trial court was whether a genuine issue of material fact existed regarding whether Rangel's 2006 pain was caused by the injury he sustained on December 16, 2003 (the compensable injury).

As summary judgment evidence, Nueces County presented, among other things, Dr. Chodosh's opinion that the 2006 injury was not related to the previous 2003 compensable injury. In response to Nueces County's motion for summary judgment, Rangel provided Dr. Puentes's report stating that the documentation supported a conclusion that there was a "causal relationship" between Rangel's 2003 compensable

12

injury and the 2006 incident.[16] Dr. Puentes opined that the herniation observed on the MRI taken at the time of Rangel's 2003 injury clearly "states he had herniated (extruded) disc" and that "herniation is still present and has not been resolved." Furthermore, in their agreed statement of facts, the parties agreed to the following facts: (1) Dr. Chodosh found that the pain Rangel suffered on May 26, 2006 was not due to a flare-up of the December 16, 2003 compensable injury; (2) Dr. Chodosh found that Rangel suffered a new injury on May 26, 2006; and (3) Dr. Puentes found that Rangel sustained a flare-up of the December 16, 2003 injury on May 26, 2006.

We conclude that a genuine issue of material fact exists concerning whether the pain Rangel suffered on May 26, 2006 was caused by the 2003 compensable injury. *Sw. Elec. Power Co.*, 73 S.W.3d at 215; *Clear Creek Basin Auth.*, 589 S.W.2d at 678. Therefore, based on our de novo review, neither party is entitled to judgment as a matter of law. *See Ranger Ins. Co.*, 107 S.W.3d at 824 ("When both sides move for summary judgment and the trial court grants one motion and denies the other, we consider all the evidence accompanying both motions to determine whether the trial court should have granted either motion and, on finding error, render the judgment the trial court should have rendered."); *Employers Reins. Corp.*, 209 S.W.3d at 917 (providing that we must remand the case to the trial court if neither movant is entitled to summary judgment). We overrule Rangel's second issue. *See Ranger Ins. Co.*, 107 S.W.3d at 824; *Employers Reins. Corp.*, 209 S.W.3d at 917

---

[16] In their agreed statement of facts, Nueces County and Rangel stipulated that the trial court would consider, among other things, the following exhibits: (1) Dr. Puentes's report from The Center for Back Pain and Management; and (2) Dr. Chodosh's report from Doctors Regional Hospital.

## V.    CONCLUSION

We affirm the trial court's denial of Rangel's motion for summary judgment, and we reverse the trial court's summary judgment in favor of Nueces County. Accordingly, we remand this cause to the trial court for further proceedings consistent with this opinion.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
10th day of March, 2011.

14